James **STRICKLER, Jr., A Minor, by James Strickler and Angela Strickler, His Parents and Natural Guardians, and James Strickler and Angela Strickler, In Their Own Right, Appellants,**

v.

**Bharati DeSAI, M.D., Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 17, 2000.

Filed Jan. 19, 2001.

Reargument Denied March 29, 2001.

Thomas Hollander, Pittsburgh, for appellants.

Korry A. Greene, Pittsburgh, for appellee.

Before CAVANAUGH, EAKIN and TAMILIA, JJ.

CAVANAUGH, J.:

¶ 1 This case involves the interpretation of the non-duplication of recovery provision of the Pennsylvania Property and Casualty Insurance Guaranty Association Act (Guaranty Association Act), 40 P.S. § 991.1817. The Pennsylvania Property and Casualty Insurance Guaranty Association (PPCIGA) was created to assume the liabilities of insolvent insurers. However, under the non-duplication provision, PPCIGA can sometimes offset its liability due to other insurance proceeds.

¶ 2 The Stricklers appeal the February 29, 2000, order denying their motion to compel payment from PPCIGA. We affirm.

¶ 3 Appellants filed this action against Bharati DeSai, M.D., on January 31, 1997, claiming that Dr. DeSai was negligent in her treatment of James Strickler, Jr., born August 29, 1994. Central to appellants' allegations was that Dr. DeSai failed to make a timely diagnosis of hydrocephalus and the child's malignant brain tumor. In appellants' complaint and in their pretrial statement, appellants claimed medical expenses for the care of the child. In fact, the pretrial statement itemized over $400,000 in past medical expenses. By August of 1999, Aetna–US Healthcare provided $423,374.48 in medical benefits.

¶ 4 On August 26, 1999, appellants petitioned the court to approve a $750,000 settlement. Physicians Insurance Company (PIC), which became insolvent during the pendency of this action, insured Dr. DeSai. PPCIGA assumed $200,000 of liability based on PIC's contract. The CAT Fund agreed to pay the additional $550,000. The settlement petition explicitly left open the question of whether PPCIGA would need to pay the $200,000 since PPCIGA claimed that under the non-duplication of recovery provision of the Guaranty Association Act, it could offset the cost of the child's medical treatments already provided by Aetna–US Healthcare. On December 30, 1999, the court approved the settlement. Since the parties agreed that appellants could seek a determination whether PPCIGA could offset the medical expenses, appellants filed a motion to compel PPCIGA to pay the $200,000. On February 29, 2000, the court denied the motion. Appellants filed their notice of appeal on March 10, 2000. Appellants' only issue on appeal is whether the trial court erred in denying the motion to compel payment.

¶ 5 PPCIGA contends that it need not pay the $200,000 since appellants have already recovered medical benefits in excess of this amount from insurance through Aetna U.S. Healthcare. PPCIGA claims this offset under the non-duplication of recovery provision of the Guaranty Association Act:

Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, worker's compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance.

40 P.S. § 991.1817(a).

¶ 6 The primary function of PPCIGA is "to provide protection to claimants whose insurers have become insolvent." *McCarthy v. Bainbridge*, 739 A.2d 200, 202 (Pa.Super.1999), *appeal granted*, 563 Pa. 647, 758 A.2d 1200 (2000). The Guaranty Association Act states that its purpose is

> (1) To provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer.
>
> (2) To assist in the detection and prevention of insurer insolvencies.
>
> (3) To provide for the formulation and administration by the Pennsylvania Property and Casualty Insurance Guaranty Association of a plan of operation necessary to effectuate the provisions of this article.

40 P.S. § 991.1801. Nevertheless, PPCIGA "should not be responsible for paying a claimant who has already received coverage for his or her claim from other insurance provided by a solvent insurer that protects the claimant against the same loss." *McCarthy*, 739 A.2d at 203.

¶ 7 Section 991.1817(a) states that PPCIGA has a right to an offset based on proceeds from "any kind of insurance." 40

P.S. § 991.1817(a). However, in *McCarthy* we stated that the phrase "any kind of insurance" was limited to insurance proceeds covering the same type of loss as was later claimed against the insolvent insurance carrier. *McCarthy*, 739 A.2d at 203. Thus, we found that a recovery under a life insurance policy could not be used to offset a claim for medical malpractice. *Id.*

¶ 8 Appellants argue that like in *McCarthy*, the insurance proceeds were for a different type of loss than those claimed in the present action. Appellants state that the medical benefits received from Aetna–US Healthcare do not relate to the claim for medical malpractice. Appellants argue that the child would have received the same treatment and thus the same benefits under Aetna–US Healthcare even if Dr. DeSai had made a prompt diagnosis. Therefore appellants argue that the insurance proceeds do not relate to their medical malpractice action.

¶ 9 Appellants' argument is belied by their complaint and pre-trial statement, which explicitly claim as damages the costs of medical expenses incurred. Since appellants themselves set forth a claim for medical expenses as damages, and since those costs were reimbursed by Aetna–US Healthcare, it would be a duplication of recovery for appellants to receive payment from PPCIGA.

¶ 10 PPCIGA is entitled to an offset under 40 P.S. § 991.1817(a). Therefore, the trial court properly declined to compel PPCIGA to pay $200,000 to appellants.

¶ 11 Order affirmed.