James PRICE and Deborah Price, Individually and as Parents and Natural Guardians of Megan Price, A Minor, Appellants,

v.

**PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION.**

Superior Court of Pennsylvania.

Argued Jan. 31, 2002.

Filed March 19, 2002.

Joshua M. Matthews, Bryn Mawr, for appellants.

Lise Luborsky, Philadelphia, for appellee.

BEFORE: JOHNSON, MUSMANNO, and BROSKY, JJ.

OPINION BY JOHNSON, J.:

¶ 1 James (Father) and Deborah (Mother) Price, individually and as the parents of Megan (Daughter) Price (collectively "the Prices"), appeal from the trial court's order granting the Pennsylvania Property and Casualty Insurance Guaranty Association's (PPCIGA) motion seeking summary judgment. The Prices present several arguments supporting their allegation that the trial court erroneously permitted PPCIGA to deduct, from its payment of settlement proceeds to the Prices, money third-party insurers paid toward Daugh-

ter's medical expenses. After review, we conclude that the trial court did not err as a matter of law. Accordingly, we affirm the trial court's order.

¶ 2 This appeal arises from a medical malpractice suit filed by the Prices against various physicians alleging that the physicians' negligent prenatal care of Mother caused permanent injury to Daughter. Over time, the Prices' medical insurance carriers reimbursed the Prices $545,924 of the near $800,000 for Daughter's medical expenses. At the time of the alleged negligent conduct, PIC Insurance Group (PIC) provided the physicians' malpractice insurance, with a policy limit of $200,000 for each of the three physicians. In 1998, the Commonwealth Court declared PIC insolvent compelling PPCIGA, to assume responsibility for PIC's· contractual obligations. PPCIGA is a statutory association of insurance companies created to protect policyholders and claimants from the consequences of an insurer's insolvency by funding claims attributable to the insolvent insurer.

¶ 3 During a trial, the parties reached a settlement agreement awarding the Prices $3.1 million. The Pennsylvania Medical Malpractice Fund (CAT) agreed to pay $2.5 million whereas PPCIGA assumed responsibility for $600,000.00 of the total award. In return, the Prices agreed to release the physicians from further litigation, reserving solely the right to litigate whether PPCIGA was entitled to an offset from medical expenses paid by Father's medical insurance carrier. PPCIGA then paid the Prices $54,076 of the $600,000 settlement on the presumption that it was entitled to an offset pursuant to 40 P.S. Section 991.1817(a) (Non Duplication of Recovery).

¶ 4 The Prices filed a subsequent complaint looking to compel PPCIGA to pay the entire $600,000 award. Following the close of discovery, the trial court granted PPCIGA's motion seeking summary judgment. The entry of summary judgment permitted PPCIGA to offset contributions to Megan's medical expenses made by Father's insurance carriers. The Prices then filed this appeal.

¶ 5 The Prices present the following issues on appeal:

(1) Did the trial court err in ruling that [PPCIGA] can offset medical insurance benefits paid to a minor's parents against settlement proceeds payable to the minor when the minor did not receive any medical insurance benefits and had no right to recover medical expenses in the underlying case?

(2) Did the trial court err in failing to recognize that the settlement amount represented a compromise of the Prices' total claims for damages and that the non-duplication of recovery provision of the Pennsylvania Property & Casualty Insurance Guaranty Act should not be applied to reduce the victim's recovery for otherwise uninsured damages such as compensation for Megan Price's pain and suffering, loss of earning capacity, loss of life's pleasures, disfigurement, embarrassment and humiliation?

(3) Did the trial court err in failing to recognize and rule that payments made by a health insurance provider should not offset against payments owed by [PPCIGA] on behalf of a failed medical malpractice insurance company because the two types of insurance insure against different risks?

Brief for Appellant at 4. Although the Prices have purportedly presented three issues, in fact, they have merely presented multiple arguments in support of the sole

contention that the trial court erred in granting summary judgment. Accordingly, we will limit our discussion to whether the trial court erred in granting PPCIGA's motion.

¶ 6 A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. *See Murphy v. Duquesne Univ. Of The Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001). As with all questions of law, our review is plenary. *See id.* Furthermore, we will view the record in the light most favorable to the non-moving party, and accept as true all well-pleaded allegations and giving that party benefit of all reasonable inferences that can be drawn from those allegations. *See Potter v. Herman,* 762 A.2d 1116, 1118 (Pa.Super.2000). In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. *See id.*

¶ 7 In their first argument, the Prices contend that Daughter's claims are distinct from those of her parents. Brief for Appellant at 10. In particular, the Prices note that Pennsylvania law recognizes parents may be compensated for medical expenses and loss of the child's services during minority. Brief for Appellant at 10. The child, however, may be compensated for "pain and suffering and for losses after minority." Brief for Appellant at 10 (citing *Hathi v. Krewstown Park Apartments,* 385 Pa.Super. 613, 561 A.2d 1261 (1989)). The Prices contend further that "[Daughter] did not and *could not* receive any payments from any 'other insurance,' because she was not legally entitled to recov-

er for medical expenses." Brief for Appellant at 12 (emphasis in original). Thus, the Prices argue, PPCIGA could not offset its obligation under the settlement agreement because Daughter was not the legally cognizable recipient of the medical benefits and her portion of the settlement distinctly contemplated a recovery for pain and suffering. Brief for Appellant at 13, 14.

¶ 8 Both parties recognize that, as an initial matter, whether PPCIGA is entitled to an offset is determined first by whether Section 991.1817 of Title 40 is controlling. Section 991.1817 aims to lessen the financial burden on the insurance industry, vis-a-vis PPCIGA, by compelling a claimant to recover first from their insurers "which are contractually bound to pay a claim." *See Panea v. Isdaner,* 773 A.2d 782, 790 (Pa.Super.2001) (en banc) (quoting *Bethea v. Forbes,* 519 Pa. 422, 548 A.2d 1215, 1218 (1988)). Specifically, Section 991.1817 provides in pertinent part:

**§ 991.1817. Non-duplication of recovery**

(a) Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, worker's compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance.

40 P.S. § 991.1817(a).

¶ 9 In the present matter, the Prices have admitted that at least $750,000 of Daughter's medical expenses was paid

by insurance. Plaintiffs' Response to PPCIGA's Motion for Summary Judgment; Reproduced Record (R.R.) at 189a. In fact, in their complaint seeking enforcement of the settlement agreement, the Prices stated that Father's medical insurance carriers paid most of the $800,000 in medical expenses incurred as a result of Megan's disability. Complaint, 6/16/00, at ¶ 8; R.R. at 55a. More importantly, as individual plaintiffs in the underlying negligence action, the Prices alleged that they incurred medical expenses for Daughter's injury and sought, in their own right, damages to compensate for those medical expenses. Complaint, 12/9/94, at ¶ 18; R.R. at 95a, 101a. The Prices expressly agreed with PPCIGA that settlement was intended to cover both present and future damages related to the underlying negligence action. Full and Final Release, 3/14/99, at ¶ 3; R.R. at 63a. Therefore, as a result of the Prices' demand for personal compensation in the negligence action, the medical expenses sought were also covered in the settlement agreement. Whether Daughter could have personally received medical payments is immaterial where her parents sought individually compensation for medical expenses incurred for Daughter's treatment and subsequently settled their claims. Moreover, PPCIGA's statutory right to offset has no effect on Daughter's right to recovery because it merely addresses damages asserted by her parents in their individual capacity. Accordingly, to the extent that Father had a claim for coverage of Daughter's medical expenses, PPCIGA is entitled to an offset up to the amount recovered from the Prices' insurance carrier pursuant to Section 991.1817. Accordingly, we conclude that the trial court did not err as a matter of law by concluding that PPCIGA was entitled to an offset. *See Murphy,* 777 A.2d at 429.

¶ 10 In their second argument, the Prices' offer, in the alternative, that if PPCIGA is entitled to an offset, it should be applied proportionally to the total settlement award. Brief for Appellant at 21. The Prices argue that such an application would reduce PPCIGA's offset from $545,924 to $109,185. Brief for Appellant at 21. The Prices direct this Court to our prior decisions in *Strickler v. DeSai,* 768 A.2d 862 (Pa.Super.2001), *Storms v. O'Malley,* 779 A.2d 548 (Pa.Super.2001) and *Panea,* 773 A.2d 782, suggesting that this Court's rationale in those cases supports their theory that PPCIGA is entitled solely to a proportionate offset. Brief for Appellant at 20. The Prices further rely on this Court's discussion in *McCarthy v. Bainbridge,* 739 A.2d 200 (Pa.Super.1999), *aff'd,* 565 Pa. 464, 774 A.2d 1246 (2001), to support their contention that Section 991.1817 is ambiguous as to how the offset is to be applied. Brief for Appellant at 16. The Prices next invite this Court to recognize such ambiguity and construe Section 991.1817 to provide PPCIGA with a proportionate offset. Brief for Appellant at 16–17.

¶ 11 Initially, we note that the cases on which the Prices rely, namely *Strickler, Storms,* and *Panea,* do not remotely support the imposition of a proportionate offset. The central question in all three cases was whether PPCIGA could obtain *any* offset not how that offset was to be calculated. Furthermore, the salient issue in *McCarthy* is readily distinguishable from that the Prices present. In *McCarthy,* we were asked to determine whether PPCIGA could obtain an offset based on the plaintiffs' life insurance recovery. *See McCarthy,* 739 A.2d at 201. We neither declared Section 911.1817 to be ambiguous nor did our holding discuss the manner in which the offset was to be calculated. Therefore, to the extent that the Prices rely on the aforementioned case law, their argument is without merit.

¶ 12 Notwithstanding the Prices' misplaced reliance on the case law, we shall look to the statutory language to determine if there is any merit to their basic contention. When interpreting a statute, the court must begin with the plain meaning of the language used in the statute. *See Ludmer v. Nernberg,* 699 A.2d 764, 765 (Pa.Super.1997). Our canons of statutory interpretation instruct that the plain words of a statute cannot be disregarded where the language is free and clear from ambiguity. *See Commonwealth v. Hagan,* 539 Pa. 609, 654 A.2d 541, 544 (1995); 1 Pa.C.S. § 1921(b). When a statute's meaning is plain, there is no occasion to further resort to rules of statutory interpretation when doing so would alter the plain meaning of the statute. *See id.* at 544–45.

¶ 13 Here, Section 991.1817 expressly calculates PPCIGA's offset as follows: "[a]ny amount payable on a covered claim under this act shall be **reduced by the amount of any recovery under other insurance.**" 40 P.S. § 991.1817(a) (emphasis added). Stated differently, PPCIGA may deduct from its liability under the settlement agreement, whatever the Prices recovered under their health insurance policies attributable to Daughter's medical expenses. The Prices fail to demonstrate, and we do not discern, any ambiguity as to how PPCIGA's offset is to be calculated. Therefore, we need look no further than the plain meaning of Section 991.1817 to understand its application. Based on that plain meaning, we conclude that the Prices' contention that PPCIGA is entitled to a proportionate offset is without merit. The section at issue includes no reference whatsoever to this manner of calculation.

¶ 14 The Prices' third argument purports that the trial court erred in failing to recognize that PPCIGA payments cover a different risk than those payments from Prices' health insurance provider.

Brief for Appellant at 21. Rather than support this argument, the Prices revisit their first two arguments and urge this panel to reconsider this Court's position with respect to PPCIGA's right to offset. Brief for Appellant at 22. To that end, the Prices submit that an *en banc* panel of this Court in *Panea* attempted to "rewrite" our Supreme Court's *per curium* decision in *McCarthy.* Brief for Appellant at 22. We note, however, that *McCarthy* involved a question of whether PPCIGA could offset life insurance proceeds and, to the extent *Panea* discusses the importance of *McCarthy,* this Court, in fact, followed the rationale presented in *McCarthy. See Panea,* 773 A.2d at 794. Because the Prices fail to develop analysis supporting their argument or present authority demonstrating their right to relief, we conclude that their third argument is without merit. *See* Pa. R.A.P. 2119(a) (requiring that appellant provide pertinent authority to demonstrate entitlement to relief sought); *See Miller v. Miller,* 744 A.2d 778, 788 (Pa.Super.1999) (establishing that appellant bears the burden of persuasion to demonstrate his entitlement to the relief he requests).

¶ 15 For the foregoing reasons, we affirm the trial court's order.

¶ 16 Order **AFFIRMED.**