Joel M. HOLLAND, Heather L. Holland, Minors, by Theresa L. HOLLAND, Parent and Natural Guardian, and Theresa L. Holland, in Her Own Right, Appellants,

v.

Edward E. MARCY, Appellee,

v.

Joel R. HOLLAND.

Superior Court of Pennsylvania.

Argued Feb. 19, 2002.

Filed Dec. 4, 2002.

Anthony J. Sciarrino, Erie, for appellants.

Joanna K. Budde, Erie, for Marcy, appellee.

Before: DEL SOLE, P.J., JOHNSON, HUDOCK, FORD ELLIOTT, ORIE MELVIN, LALLY–GREEN, TODD, BENDER and BOWES, JJ.

OPINION BY ORIE MELVIN, J.:

■ ¶ 1 Appellants, Joel Holland and Heather Holland, minors by and through their mother, Theresa Holland, appeal from the Order granting summary judgment in favor of Appellee, Edward E. Marcy. The trial court determined that because mother neglected to acquire automobile insurance coverage for her registered vehicle and was therefore deemed to have selected the limited tort option pursuant to 75 Pa.C.S.A. § 1705(a)(5), the minor Appellants stood in the same shoes as their mother and were likewise deemed subject to a limited tort recovery. In reaching this decision the trial court found persuasive the rationale expressed in the Commonwealth Court case of *Hames v. Philadelphia Housing Authority,* 696 A.2d 880 (Pa.Cmwlth.1997). Since *Hames* represents a conflicting viewpoint[1] from this Court's decision in *Ickes v. Burkes,* 713 A.2d 653 (Pa.Super.1998), we granted *en banc* certification to re-examine this Court's view on this issue. After review, we are not persuaded by the *Hames* Court's reasoning. Our anaylsis of the interplay between the relevant sections of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), and prior appellate precedent construing the term "owner" as used in the MVFRL, convinces us that the rationale expressed in *Ickes,* as more fully crystallized herein, is the better view. Therefore, we reverse the grant of summary judgment and remand for further proceedings with respect to the minor Appellants.

---

1. We of course recognize that "a decision of the Commonwealth Court is not binding precedent upon this Court; however, it may be considered for its persuasive value." *Commonwealth v. Lewis,* 718 A.2d 1262, 1265 n. 10 (Pa.Super.1998), *appeal denied,* 558 Pa. 629, 737 A.2d 1224 (1999).

## FACTS AND PROCEDURAL HISTORY

¶ 2 Before turning to a discussion of the legal issues, we set forth the facts and procedural history of this matter. This negligence action arose from a motor vehicle accident that occurred in the early morning of August 3, 1997. Appellants were passengers in a 1985 Chevrolet Celebrity owned by Theresa Holland and being driven by her ex-husband, Joel R. Holland. The Holland vehicle was travelling in an easterly direction in the left lane of State Route 20 in Erie County, Pennsylvania. An accident occurred when Mr. Marcy, who was traveling easterly in the right lane, abruptly made a left turn by crossing the left (passing) lane and into the westbound lanes of State Route 20 bringing his vehicle into contact with the vehicle occupied by the Appellants. As a result of the impact, Joel Holland suffered a laceration to his forehead, leaving a scar, and further sustained a cervical strain and sprain. Heather Holland suffered a contusion of her right knee, cervical strain and sprain, contusions to her face, and recurrent nose bleeds. Appellants instituted suit against Mr. Marcy to recover economic and non-economic damages sustained as a result of his alleged negligence.

¶ 3 Thereafter, Mr. Marcy filed an Answer, New Matter and a Complaint to Join Additional Defendant Joel R. Holland[2]. Following discovery, which revealed that insurance coverage on the Holland vehicle had lapsed, Mr. Marcy filed a Motion for Summary Judgment arguing that the minor Appellants were bound by the deemed selection of the limited tort option resulting from Theresa Holland's failure to maintain appropriate insurance on her motor vehicle. He further asserted that all of the injuries claimed by the Appellants were not serious injuries as defined by the MVFRL, and thus, summary judgment was appropriate. Appellants filed responsive briefs, and on September 27, 2000, oral argument was heard before the Honorable Shad Connelly. On January 5, 2001, Judge Connelly granted summary judgment. This timely appeal followed.

## ISSUES

¶ 4 Appellants frame two issues for our consideration. First, "[a]re minor [Appellants] bound by the vehicle owners' [sic] imputed selection of the limited tort option if the owner fails to have automobile insurance?" Appellants' brief, at 5. Alternatively, if the limited tort option was appropriately applied "[a]re the injuries of Joel Holland (facial scarring), of sufficient nature to require a jury to determine if said injuries constitute 'permanent serious disfigurement' under Section 1702 of the [MVFRL]?" *Id.*

## DISCUSSION

¶ 5 Initially, we note that when considering whether the trial court erred in granting summary judgment, our review is plenary. *Kleban v. National Union Fire Insurance Co.*, 771 A.2d 39, 42 (Pa.Super.2001). Moreover, this Court is not bound by the conclusions of law of the trial court, as we may reach our own conclusions and draw our own inferences. *Adamski v. Allstate Ins.*, 738 A.2d 1033 (Pa.Super.1999), *appeal denied*, 563 Pa. 655, 759 A.2d 381 (2000) (citation omitted). We may disturb the trial court's order only upon a finding of an error of law or abuse of discretion. *Bostick v. Schall's Brakes and Repairs, Inc.*, 725 A.2d 1232, 1236 (Pa.Super.1999), *appeal denied*, 560 Pa. 694, 743 A.2d 912 (1999). In determining whether summary judgment was

2. The ex-husband, Additional Defendant Joel R. Holland, has never appeared the instant matter or raised any defenses to Mr. Marcy's claims.

properly granted, this Court applies the same standard as the trial court. *Harber Philadelphia Center City Office Limited v. LPCI Ltd. Partnership,* 764 A.2d 1100, 1103 (Pa.Super.2000), *appeal denied,* 566 Pa. 664, 782 A.2d 546 (2001) (citation omitted).

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.... In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law.

*Schwartzberg v. Greco,* 793 A.2d 945, 947 (Pa.Super.2002) (quoting *Piluso v. Cohen,* 764 A.2d 549, 550 (Pa.Super.2000), *appeal denied,* 568 Pa. 633, 793 A.2d 909 (2002) (citations omitted)).

¶ 6 Moreover, statutory interpretation involves issues of law that are subject to plenary review by this Court. *Commonwealth v. Packer,* 568 Pa. 481, 798 A.2d 192 (2002). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Holt v. Lenko,* 791 A.2d 1212, 1214 (Pa.Super.2002). The Legislature's intent "can only be derived by reading all sections of the statute together and in conjunction with each other and construed with reference to the entire statute." *Storms ex rel. Storms v. O'Malley,* 779 A.2d 548, 559 (Pa.Super.2001) (quoting *Panea v. Isdaner,* 773 A.2d 782, (Pa.Super.2001)). If the plain and ordinary meaning of a statute is clear, judicial construction is neither necessary nor permitted. *Price v. Pennsylvania Property,* 795 A.2d 407 (Pa.Super.2002). "When the words of a statute are clear and unambiguous, a court cannot disregard them under the pretext of pursuing the spirit of the statute." *Grom v. Burgoon,* 448 Pa.Super. 616, 672 A.2d 823, 825 (1996); 1 Pa.C.S.A. § 1921(a).

¶ 7 Since this matter involves the interpretation of various sections of the MVFRL, we must begin by analyzing the express words of the statute. *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 567 Pa. 514, 521, 788 A.2d 955, 959 (2001). Our examination, therefore, begins with § 1705(a)(5), which provides: "[a]n **owner** of a currently registered private passenger motor vehicle who does not have financial responsibility shall be deemed to have chosen the limited tort alternative." (emphasis added). In relevant part § 1705(b)(2) states: "[t]he tort option elected by a **named insured** shall apply to all insureds under the private passenger motor vehicle policy who are not **named insureds** under another private passenger motor vehicle policy." (emphasis added). Section 1705(b)(3) provides that "an individual who **is not an owner** of a currently registered private passenger motor vehicle **and who is not a named insured or insured under any private passenger motor vehicle policy shall not be precluded from maintaining an action for noneconomic loss or economic loss** sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law." (emphasis added). Additionally, we note that under both § 1702(2) and § 1705(f), an "Insured" is defined as any individual residing in the household of the **named insured** who is a spouse or other relative of the **named insured**; or a minor in the custody of either the **named insured** or relative of the **named insured**. 75 Pa.C.S.A.

§§ 1702(2), 1705(f) (emphasis added). A "named insured" is defined as "[a]ny individual identified by name as an insured in a policy of private passenger motor vehicle insurance." 75 Pa.C.S.A. § 1705(f).

¶ 8 Appellants advocate for application of our holding in *Ickes* to the facts of this case. Conversely, Mr. Marcy argues *Hames* is more applicable because its facts are virtually identical. Initially, we note the fact that *Ickes* involved an injured adult passenger whereas *Hames*, as in the instance case, involved injured passengers who were minors is a distinction without a difference in determining the proper interpretation of the applicable provisions of the MVFRL.

¶ 9 In *Hames*, appellants, Venice Hames, Venicia Hames, a minor, and Kiara Hames, a minor, were involved in an accident in which their vehicle collided with a vehicle driven by an employee of appellee, the Philadelphia Housing Authority. Venice Hames was driving an uninsured Plymouth Voyager minivan registered to his wife, Angela Hames. Venicia and Kiara, age six and three respectively at the time of the accident, were passengers in the vehicle. Appellee filed a motion for summary judgment on the ground that Venicia and Kiara were bound by the limited tort option because Angela Hames' vehicle was uninsured. Thus, the children were not entitled to recover non-economic damages unless they suffered a serious injury. The trial court agreed and further determined that the minors' injuries were not serious and therefore granted summary judgment.

¶ 10 On appeal the Commonwealth Court initially considered the serious injury question. After reviewing the record, the court determined that it was unclear as to whether the appellants had actually received certain medical reports at the time the trial court granted summary judgment. Therefore, the Commonwealth Court found it necessary to remand so the trial court could determine whether the reports raised an issue of fact concerning whether the minors sustained a serious impairment of bodily function. The Commonwealth Court went on to address the alternative argument that the minors were neither owners of their mother's vehicle nor named insureds under any automobile insurance policy and thus, not barred from pursuing full tort recovery.

¶ 11 In rejecting the appellants' argument, the panel in *Hames* concludes as follows:

> Because her vehicle was uninsured, Angela Hames is deemed by operation of law to have selected the limited tort option. Moreover, § 1705(b)(2) provides that the tort option selected by a named insured shall apply to all insureds under the policy. Logically, then it must follow that Venica and Kiara are bound by their mother's deemed selection of the limited tort option, regardless of whether she had an insurance policy on her vehicle.
>
> To decide otherwise and to accept Appellants' argument would afford greater rights to minor children whose parents have no insurance than to minor children whose parents have purchased insurance and chosen the limited tort option.

*Hames*, 696 A.2d at 883. We disagree with this interpretation of §§ 1705(a)(5) and (b)(2). The holding in *Hames* does not provide an analysis of the terms used in the relevant sections or make any reference to the definitions provided by the MVFRL concerning the meaning of the terms "named insured" or "insured" as used in subsections (b)(2) and (3). Rather, *Hames* assumes that children of parents who fail to comply with the financial responsibility requirement would be treated

better than children of parents who do comply. In this regard we would point out that the children of parents who have no insurance are not necessarily better off than those of parents who have purchased insurance and chosen the limited tort option. A parent without insurance is not only subjecting himself or herself to criminal prosecution but is also risking the loss of family assets if that parent is found to be at fault in causing an accident. Moreover, if the Hollands were hit by an uninsured tortfeasor, they would not have their own uninsured or underinsured motorist coverage to tap into and thus risk no recovery in the event the tortfeasor is judgment proof. We must not lose sight of the fact that the purpose for requiring financial responsibility is to insure that the tortfeasor has the ability to respond in damages for the harm he or she has inflicted upon the innocent victims.

¶ 12 In essence, the *Hames* Court is equating owner with named insured when in fact precedent and the definitions provided in the statute itself lead us to hold otherwise. Although not articulated, it appears the *Hames* court is inferring that Angela Hames was a "named insured," and therefore her minor children were "insured" under the nonexistent "policy." As such, the limited tort option, which Angela Hames was deemed to have chosen by operation of law, would apply to all insureds under her "private passenger motor vehicle policy." This argument contradicts the clear language used in the MVFRL, and ignores the purpose of § 1705(a)(5), which serves to punish only the owner of an uninsured vehicle for their neglect or willfulness in failing to meet their financial responsibility prescribed by law. *See e.g., Habbyshaw, infra.*

¶ 13 In the *Ickes* case, Mrs. Ickes was injured in a motor vehicle accident while riding as a passenger in her husband's uninsured motor vehicle. The vehicle was titled and registered solely in her husband's name. Mrs. Ickes filed suit against Ms. Burkes for the injuries sustained in the accident seeking recovery for both economic and non-economic damages. Ms. Burkes filed a motion *in limine* seeking a determination that Mrs. Ickes was not entitled to full tort recovery. Rather, she argued Mrs. Ickes was bound by the limited tort option her husband was deemed to have chosen. Alternatively she argued that Mrs. Ickes had a property interest in her husband's car. Therefore she was a *de facto* owner of the uninsured vehicle and also deemed to have chosen the limited tort option by operation of § 1705(a)(5). The trial court rejected both arguments, and the jury returned a verdict in favor of Mrs. Ickes.

¶ 14 On appeal this Court affirmed. We found Mrs. Ickes was entitled, pursuant to § 1705(b)(3), to collect full tort benefits because:

1) she was not an 'owner' of a currently registered motor vehicle [due to a lack of indicia of ownership]; 2) she was not an 'insured under any private passenger motor vehicle policy;' and 3) she was not at fault for the accident. The fact that her husband, as the owner of an uninsured, currently registered vehicle, was 'deemed to have chosen the limited tort alternative,' by operation of law, *see* 75 Pa.C.S.A. § 1705(a)(5), does not mean that the [Mrs. Ickes] is an 'insured' as defined by the MVFRL.

*Ickes,* 713 A.2d at 656. In reaching this decision we compared §§ 1705(b)(2) and (b)(3) and examined their interplay with §§ 1705(a)(5) by reference to the definitions provided in § 1705(f). Given the definitions supplied by the MVFRL we found the clear and unambiguous language of 1705(b)(2), which describes the application of the tort options by reference to the

named insured's election, only applies to situations where there is an insurance policy in place and thus a named insured under that policy. Where there is no private passenger motor vehicle insurance policy in place there can be no "named insured." Thus, the only person that can be deemed to have chosen the limited tort alternative is an owner of an uninsured, currently registered vehicle.

¶ 15 Our holding in *Ickes* is consistent with this Court's, as well as the Commonwealth Court's construction of the term "owner" as used in other provisions of the MVFRL, as a person that has "an actual cognizable property right in the vehicle as well as de facto indicia of ownership." *See Bethea v. Pennsylvania Fin. Responsibility Assigned Claims Plan*, 407 Pa.Super. 57, 595 A.2d 122, 126 (1991) and *Habbyshaw v. DOT, Bureau of Driver Licensing*, 683 A.2d 1281 (Pa.Cmwth.1996) (discussed *infra* ).

¶ 16 In *Allen v. Merriweather*, 413 Pa.Super. 410, 605 A.2d 424 (1992), *appeal denied*, 533 Pa. 622, 620 A.2d 489 (1993), this Court was asked to determine whether a husband-driver of an uninsured motor vehicle, registered and titled solely in his wife's name, was considered an "owner" of the uninsured vehicle under § 1714 of the MVFRL. Pursuant to § 1714, an owner of a registered vehicle that does not have financial responsibility cannot recover first-party benefits. In resolving this question we applied the definition of owner found in § 102 of the Vehicle Code to the MVFRL and were further guided by the decision in *Bethea v. Pennsylvania Fin. Responsibility Assigned Claims Plan*, 407 Pa.Super. 57, 595 A.2d 122 (1991) (which clarified our prior holding in *Ibarra v. Prudential Property & Casualty Ins. Co.*, 402 Pa.Super. 27, 585 A.2d 1119 (1991)). In *Bethea*, we held that a person must have "an actual cognizable property right in the vehicle as well as a de facto indicia of ownership" to be considered an owner pursuant to § 1714 of the MVFRL. *Bethea, supra* at 126. Based upon *Bethea* the inquiry in *Allen* became whether there was "sufficient indicia of control or ownership which would support imputing the obligation to provide financial responsibility" onto the driver-husband. In answering this question we looked to certain determinative factors, namely: the husband's property interest in the vehicle under Pennsylvania marital property law; the fact that the automobile was purchased after the couple was married; the husband's residing with the owner-wife on the date of the accident; the wife's permitting the husband to drive the vehicle which he knew was uninsured at the time he was driving it; and, the husband's enjoyment of the use and benefits of the car. Under these facts, we imputed the wife's ownership status onto the husband and consequently imputed the denial of entitlement to receive first-party benefits.

¶ 17 In contrast, where we have determined that there were insufficient indicia of ownership we have refused to impute ownership status. For instance, in *Ibarra, supra*, this Court held that a wife injured, while driving an uninsured vehicle titled and registered solely in her estranged husband's name, was not an owner of the vehicle nor did she have a property interest in the vehicle. Consequently, we did not impute upon her the responsibility for the decision not to secure financial responsibility, and thus she was not precluded under § 1714 from recovering first-party benefits under her policy on a different vehicle. In *Elder v. Nationwide Ins. Co.*, 410 Pa.Super. 290, 599 A.2d 996 (1991), we also declined to extend the preclusive effect of § 1714 to persons without an ownership interest in the uninsured vehicle. Therein, we noted that "the language of [§ 1714] preconditions its applicability

upon the ownership of a currently registered but uninsured vehicle." *Id.* at 998. Similarly, the language of § 1705(a)(5) preconditions its application upon the ownership of a currently registered but uninsured vehicle.

¶ 18 Moreover, in *Habbyshaw v. DOT, Bureau of Driver Licensing,* 683 A.2d 1281 (Pa.Cmwth.1996), the Commonwealth Court considered the question of whether a husband could be deemed an "owner" of the car registered in his wife's name for purposes of § 1786. Section 1786 of the MVFRL provides in pertinent part as follows:

§ **1786. Required financial responsibility**

(a) **General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

\*    \*    \*    \*    \*    \*

(d) **Suspension of registration and operating privilege.**—The Department of Transportation shall suspend the registration of a vehicle for a period of three months if it determines the required financial responsibility was not secured as required by this chapter and shall suspend the operating privilege of the **owner or registrant** for a period of three months if the department determines that the **owner or registrant** has operated or permitted the operation of the vehicle without the required financial responsibility.

\*    \*    \*    \*    \*    \*

(f) **Operation of a motor vehicle without required financial responsibility.**—Any **owner** of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation **shall not operate the motor vehicle or permit it to be operated** upon a highway of this Commonwealth without the financial responsibility required by this chapter. In addition to the penalties provided by subsection (d), any person who fails to comply with this subsection commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $ 300.

75 Pa.C.S.A. § 1786 (emphasis added). In reference to this section the court therein stated: "[i]t is clear under this provision that the penalties for failing to comply with the financial responsibility requirements, including criminal and administrative penalties, apply **only to owners or registrants.**" *Habbyshaw,* 683 A.2d at 1282 (emphasis added).

¶ 19 In answering the ownership question for purposes of Section 1786 of the MVFRL the Commonwealth Court specifically applied this Court's reasoning in *Allen* and *Bethea.* The Commonwealth Court concluded that there were sufficient indicia of ownership by husband based on the facts that "[a]t the time of his traffic stop, he and his wife were married and living together. The car [husband] was driving was the only vehicle in the household, and he was the only licensed driver. Appellee was on a personal errand at the time, a job interview, and he had not asked his wife's permission to use the car for that errand. He had access to the car and drove it knowing it was uninsured." *Id.* at 1284.

¶ 20 Thus, in *Ickes,* the husband, as the sole owner of an uninsured currently registered vehicle, was deemed to have chosen the limited tort alternative pursuant to § 1705(a)(5). However, we properly declined to impute his deemed status as a limited tort selector to his wife who had no ownership interest as established by *Bethea* and was merely riding in the uninsured vehicle at the time of the accident causing her injuries. Since the wife was

under no legal obligation to maintain financial responsibility for a vehicle she did not own, she could not be subject to the same punishment as an owner who has violated the law.

¶ 21 The difficulty with *Hames'* rationale is revealed when one considers related provisions of the MVFRL. For instance, an owner who operates a vehicle without the requisite financial responsibility commits a summary offense and is subject to fine and suspension of vehicle registration and operating privilege. *See* 75 Pa.C.S.A. §§ 1785 and 1786(d) & (f); and *Habbyshaw, supra.* If we accept the rationale expressed in *Hames,* then by extension we would also have to be willing to deem the innocent nonowner spouse with having committed a summary offense and subject her to a fine and suspension of her operating privilege. This is but one example where the *Hames* Court's construction of § 1705(a)(5) and (b)(2) could lead to an incongruous result.

■ ¶ 22 Fortunately, the words used in § 1705(b) of the MVFRL are clearly defined, and thus we need not engage in any statutory construction. In this case there is no dispute over the fact that the minors are not owners. Further, they do not meet the definition of either a "named insured" or an "insured" as provided in § 1705(f). Accordingly, when §§ 1705(a)(5), (b)(2) and (3) are read together and the terms used therein are given the plain meaning as defined by § 1705(f), the minors can only fall within the ambit of § 1705(b)(3), as individuals who **are not owners** of a currently registered private passenger motor vehicle **and who are not named insureds or insureds under any private passenger motor vehicle policy**. Consequently, they are permitted to maintain an action for both noneconomic loss and economic loss sustained as the consequence of the fault of another person pursuant to applicable tort law. To hold otherwise would punish innocent victims for the conduct of another. *See Henrich v. Harleysville Ins. Co.,* 533 Pa. 181, 620 A.2d 1122 (1993) (wherein our Supreme Court found that the restriction against recovery of first party benefits for owners of uninsured registered vehicles does not apply to the passengers of such uninsured vehicles); *see also, Berger v. Rinaldi,* 438 Pa.Super. 78, 651 A.2d 553 (1994), *appeal denied,* 544 Pa. 641, 664 A.2d 971 (1995) (holding that § 1705(a) does not apply to situations where the claimant was not operating his uninsured vehicle at the time of the accident).

■ ¶ 23 Essentially, what can be gleaned from the cases of *Ibarra, Bethea, Allen, Elder* and *Habbyshaw* is that §§ 1714, 1752(a)(3), 1785, 1786(d) and (f), serve to punish only the vehicle owner for his or her failure to maintain insurance on their vehicle. Section 1705(a)(5) is no different. Hence, application of the rule of *stare decisis*[3] dictates § 1705(a) must be construed in the same manner. Furthermore, the applicability of § 1705(b), which is titled "Application of tort options," is dependent upon who is or is not considered a "named insured" or an "owner." Consequently, in light of the clear meaning of "insured" and "named insured" and our past construction of the term "owner," to now find that Joel Holland and Heather Holland are barred from recovery of non-economic losses under § 1705(b)(2) requires us to engage in an impermissible judicial redrafting of § 1705(a)(5). We find that the *Hames* de-

---

**3.** "The rule of *stare decisis* declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." *Commonwealth v. Tilghman,* 543 Pa. 578, 588 n. 9, 673 A.2d 898, 903 n. 9 (1996).

cision does just that by expanding the scope of § 1705(a)(5). The effect of the *Hames* decision is to extend the punitive scope of § 1705(a)(5) beyond the vehicle's owner by also placing blame on the owner's spouse and other resident relatives where the facts show they otherwise have no ownership interest. As a matter of statutory interpretation, although "one is admonished to listen attentively to what a statute says[;] one must also listen attentively to what it does not say." Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L.Rev. 527, 536 (1947). If the Legislature intended to impute limited tort status beyond the owner of an uninsured vehicle it could have easily included the language "owner's spouse and other resident relatives" to effectuate such a result. Instead, it specifically limited the scope of § 1705(a)(5) to owners. Accordingly, precedent as well as logic dictates that we also decline to extend the preclusive effect of § 1705(a) to persons without an ownership interest in the uninsured vehicle. The *Hames* Court's application of § 1705(a) in conjunction with its construction of § 1705(b)(2) in this case would have the effect of imputing the obligation to provide financial responsibility under the MVFRL to minors. We decline to adopt this reasoning.[4]

¶ 24 In sum, as the above precedent illustrates, the consequences stemming from an owner's failure to meet the requisite financial responsibility of the MVFRL should only flow to owners or those deemed to be owners. It would be contradictory for us to now hold that a non-owner spouse, as in *Ickes* or minor children as in *Hames* and the instance case, are deemed to have selected the limited tort option pursuant to § 1705(a) when we would not do so for similarly situated spouses under §§ 1714, 1752(a) and 1786. Therefore, we reaffirm our holding in *Ickes* as it is in keeping with the previous construction of the term owner as used in the MVFRL by both this Court and the Commonwealth Court.[5] We recognize that our decision to reaffirm *Ickes* leaves a conflict between this Commonwealth's intermediate appellate courts on the issue, and thus final authority must await determination by our Supreme Court. Nonetheless, after carefully reviewing the appellate jurisprudence in this area, and giving due respect to *stare decisis*, and

---

4. The dissent suggests the language of the statute "clearly ... evinces an intent by the legislature to create the legal fiction of an insurance policy where the uninsured owner of a vehicle stands in the place of a named insured" slip p. 4. While the legislature can employ a legal fiction to secure an intended result, courts should not disregard the plain meaning of a statute. *Washington v. Baxter*, 553 Pa. 434, 719 A.2d 733 (1996); *Guinn v. Alburtis Fire Co.*, 531 Pa. 500, 614 A.2d 218 (1992); *Commonwealth v. Harner*, 533 Pa. 14, 617 A.2d 702 (1992). Here, a plain reading of the statutory definition of the term "named insured" along with the common usage and past construction of the term "owner" dictates the instant result.

As our colleague, Judge Popovich, recognized in *Ickes* "If the Legislature had intended [someone in Theresa Holland's position] to be

a 'named insured' as defined in 75 Pa.C.S.A. § 1705(f) because [she] did not have financial responsibility, § 1705(a)(5) would not have merely stated that [she] was 'deemed to have chosen the limited tort option,' but, rather, would have expressly stated [she] was deemed to be a 'named insured in a policy of private passenger motor vehicle insurance.'" *Ickes*, 713 A.2d at 656. Moreover, as Judge Hudock points out in his Concurring Statement, if the Legislature did not intend such a result, it is within the legislative power to correct and not the judiciary.

5. Since our resolution of the first issue permits the minor plaintiffs to pursue recovery for both economic and non-economic damages, the question of whether their injuries constitute permanent serious disfigurement under Section 1702 of the MVFRL is moot.

due deference to our sister court, it is our considered view that this Court's decision in *Ickes* reflects a more jurisprudentially sound rationale.

¶ 25 Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

¶ 26 DEL SOLE, P.J., FORD ELLIOTT, J., and BENDER, J. join in the majority opinion.

¶ 27 HUDOCK, J. files a Concurring Statement.

¶ 28 TODD, J. files a Concurring Statement.

¶ 29 BOWES, J. files a Concurring and Dissenting Opinion, in which JOHNSON, J. and LALLY–GREEN, J. join.

CONCURRING STATEMENT BY HUDOCK, J.:

¶ 1 I reluctantly join in the result reached by the majority. The language of the statute in question which binds all occupants of a vehicle to the tort option elected by the "named insured", does by its very terms seem to limit the effect of this subsection to insureds, which presupposes the existence of an insurance policy. In the present case, there was no policy in effect at the time of the accident and Section 1705(a)(5), which compels an election of limited tort responsibility where there is no coverage, seems to apply only to an "owner". Since the minor passengers in the car were not owners, the result reached by the majority, I believe, is correct.

¶ 2 I disagree with the majority, however, that the result herein does not reward irresponsible parents, who in violation of the law, do not carry liability insurance. I agree with Commonwealth Court in *Hames*, 696 A.2d at 883, that the result here affords greater rights to minor children whose parents flout the law by not buying insurance than to children of more responsible parents who purchase liability insurance, but who choose the limited tort option.

¶ 3 The Mother–Appellant in the present case is a case study in insurance irresponsibility. A policy with Dairyland Insurance Co. was cancelled on February 13, 1997, for non-payment of premium. In that policy, Mother selected the limited tort option. A policy was then procured with State Farm Insurance Co., on June 2, 1997, and again Mother selected the limited tort option. That policy was cancelled on July 19, 1997, because Mother's driver's license had been suspended on November 1, 1995. After being notified that her insurance had been cancelled, Mother allowed the car to be driven. Now, her irresponsibility is being rewarded by giving her children greater protection than she had chosen when she had insurance coverage.

¶ 4 It is no answer to this injustice, as the majority suggests, that parents in this situation will not necessarily be better off than parents who display more responsibility because the irresponsible parents subject themselves to criminal prosecution and risk loss of family assets if they are found to be at fault in an accident. The fact remains that the children of irresponsible parents will have greater protection when the fault lies with a third party–all without the parents paying for such increased protection.

¶ 5 While I join in the majority's disposition, I suggest the legislature correct this injustice by amending the statute to make clear that one who operates a motor vehicle without liability insurance is deemed to select a limited tort option for herself and for all occupants of the vehicle.

## CONCURRING STATEMENT BY TODD, J.:

¶ 1 I agree with the Majority's thorough analysis of the language of the statute in question and, hence, join in its holding that minor passengers are not bound by the vehicle owner's imputed selection of the limited tort option by failing to maintain automobile insurance. I recognize as well, however, the inconsistency pointed out by Judge Hudock in his thoughtful concurring statement that the result reached herein has the effect of affording greater rights to the minor children of irresponsible drivers who have failed to purchase liability insurance than to the minor children of insured parents who have selected the limited tort option coverage. I stop short, however, of joining Judge Hudock's Concurrence because I cannot join in his suggestion that the legislature correct this inconsistency "by amending the statute to make clear that one who operates a motor vehicle without liability insurance is deemed to select a limited tort option for herself and for all occupants of the vehicle."

¶ 2 While I agree with Judge Hudock that it is the legislature's prerogative to revisit this issue and address this inconsistency, I would suggest that the legislature consider a solution which takes into consideration both the purposes of the MVFRL in requiring financial responsibility and the public policy of this Commonwealth concerning the protection of the rights of children, even from their parents' ability to compromise those rights, whether purposefully or inadvertently. *See e.g., Nicholson v. Combs,* 550 Pa. 23, 34, 703 A.2d 407, 412 (1997) (one parent cannot bargain away his or her children's right to support from the other parent); *Moore v. Moore,* 535 Pa. 18, 25, 634 A.2d 163, 166–67 (1993) (in child custody cases, "the concept of waiver would be inappropriate . . . where the welfare of the child is the ultimate

concern of the Court"); *Storms v. O'Malley,* 779 A.2d 548, 556 (Pa.Super.2001) (purpose of Pa.R.C.P.2039(a), requiring court approval of compromise, settlement or discontinuance of any actions to which a minor is a party, is to prevent settlements that are unfair to minors and ensure that the minor receives the benefit of the money awarded); *Shaner v. State Sys. of Higher Educ.,* 40 Pa. D. & C.4th 308, 313–14 (C.P. Dauphin 1998) (parents do not possess the authority to release the claims or potential claims of a minor child merely because of the parental relationship), *aff'd without opinion,* 738 A.2d 535 (Pa.Cmwlth. 1999). This public policy, as enunciated by the courts of this Commonwealth, is consistent with that of other jurisdictions. *See, e.g., Cooper v. Aspen Skiing Co.,* 48 P.3d 1229, 1231 (Co.2002) (holding that under Colorado law a parent may not release a minor's own prospective claims for negligence), and cases cited therein.

## CONCURRING AND DISSENTING OPINION BY BOWES, J.:

¶ 1 I believe that the majority's interpretation of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1701, *et seq.,* is contrary to our legislature's intent, and I respectfully dissent. I would instead affirm the trial court's decision that the minors in this case are bound by the limited tort option. However, I find that there is a genuine issue of material fact as to whether Joel Holland's facial scarring is a permanent serious disfigurement and would reverse and remand for a jury to decide whether Joel can recover for his injuries.

¶ 2 This litigation involves an automobile accident in which the two minor plaintiffs, Joel Holland and Heather Holland, were injured while riding in an uninsured automobile owned by their mother and operated by their father. The issue before this

Court is whether the aforesaid minors are bound by the limited tort option.

¶ 3 The goal of judicial interpretation of legislation is to ascertain and give effect to the legislative intent. 1 Pa.C.S. § 1921(a). Legislative intent is discerned by certain established principles promulgated by the legislature. 1 Pa.C.S. §§ 1901–1978. Several of the precepts outlined in those statutory enactments are pertinent herein. First, when the words of a statute are clear and unambiguous, they are not to be disregarded. 1 Pa.C.S. § 1921(b). In those situations when the words of a statute are not explicit, legislative intent may be garnered by considering the mischief the statute seeks to remedy and the objective of the statute. 1 Pa.C.S. § 1921(c)(3), (4). In determining legislative intent, we presume that the General Assembly did not intend a result that is absurd or unreasonable. 1 Pa.C.S. § 1922(1). Finally, statutes or parts of statutes are to be construed *in pari materia.* 1 Pa.C.S. § 1932.

¶ 4 These principles militate in favor of finding that the minor plaintiffs are bound by the limited tort option. The statutory provision critical to our analysis, 75 Pa. C.S. § 1705(a)(5), provides, "An owner of a currently registered private passenger motor vehicle who does not have financial responsibility shall be **deemed to have chosen** the limited tort option." (emphasis added). Next, 75 Pa.C.S. § 1705(b)(2) states, "The tort option elected by a named insured shall apply to all insureds under the private passenger motor vehicle policy who are not named insureds under another private passenger motor vehicle policy." A "named insured" is an individual identified by name as an insured in a policy of private passenger motor vehicle insurance. 75 Pa.C.S. § 1705(f). Finally, an "insured" is defined in relevant part as "a minor in the custody of either the named insured or

relative of the named insured." 75 Pa.C.S. §§ 1702, 1705(f).

¶ 5 Based on the fact that the minors' mother in this case had no insurance, the majority concludes there is no policy under which she is a named insured. The majority continues that since the minors did not own an uninsured vehicle and since they are not named insureds or insureds under any other policy, under 75 Pa.C.S. § 1705(b)(3), they are not precluded from maintaining an action for non-economic loss or economic loss sustained in a motor vehicle accident that is the fault of another person.

¶ 6 I believe that the majority overlooks the significance of the statutory language that an uninsured owner of a registered vehicle is "deemed to have chosen" the limited tort option. This choice of words expresses the legislature's intent to provide for the fictionalized creation of an insurance policy under which the uninsured owner of a vehicle has affirmatively selected the limited tort option.

¶ 7 Pursuant to the MVFRL, only a "named insured" under an insurance policy can choose a tort option. By indicating that an uninsured automobile owner is considered to "have chosen" the limited tort option, the legislature intended the uninsured vehicle owner to be treated like a named insured under an insurance policy.

¶ 8 When read *in pari materia,* 75 Pa. C.S. § 1705(a)(5) and § 1705(d) support such an interpretation of the MVFRL. Section 1705(a)(5) provides that the uninsured owner is deemed to "have chosen" the limited tort option, whereas section 1705(d) states that each person who is "bound by" the limited tort option shall be precluded from instituting a suit under certain limited circumstances. If the legislature intended 75 Pa.C.S § 1705(a)(5) to be restricted only to the owner of the uninsured vehicle, it would have employed

narrower language as can be found in 75 Pa.C.S § 1705(d) where it utilized the phrase "bound by" rather than "have chosen." By stating that the uninsured owner of a vehicle is deemed to "have chosen" the limited tort option, the legislature intended a more expansive interpretation than the majority endorses. Clearly, this language evinces an intent by the legislature to create the legal fiction [6] of an insurance policy where the uninsured owner of a vehicle stands in the shoes of a named insured.

¶ 9 The majority focuses on the silence of the MVFRL concerning application of the limited tort option to the spouse and minor children of the uninsured owner, but it ignores the fact that if the legislature intended only the uninsured owner of a vehicle to "be bound" by the limited tort option, it simply would have said so. This it did not do, and I therefore conclude that the legislature did not intend the result reached by the majority.

¶ 10 Consequently, I believe the minor children of the uninsured person, in the persona of a named insured under a fictional policy of insurance, are bound by the tort option selected by the named insured, that is, the limited tort option. *See* 75 Pa.C.S §§ 1705(d) and (f)(2). Undeniably, the minors at issue clearly fall within the statutory definition of insureds as minors in custody of their mother. *See* 75 Pa.C.S. § 1702.

¶ 11 This interpretation alleviates the mischief sought to be remedied by the statute and fulfills its objective. The MVFRL was amended in 1990 due to concerns over the increasing costs of automobile insurance and the increasing number of uninsured motorists, and these legislative concerns express the public policy that we must advance when interpreting the statutory provisions of the MVFRL.[7]

---

**6.** The legislature is fully empowered to and often employs legal fictions, as do the courts. *See, e.g., Commonwealth v. Iafrate*, 527 Pa. 497, 594 A.2d 293 (1991) (examining legal fiction that a person reaches a given age on the day preceding the anniversary of his birth); *In re Deed of Trust of Rose Hill Cemetery Ass'n*, 527 Pa. 211, 590 A.2d 1 (1991) (discussing legal fiction created by legislature that corporation is a legal entity separate and distinct from its shareholders); *Commonwealth v. Mudrick*, 510 Pa. 305, 507 A.2d 1212 (1986)(legal fiction of constructive possession in drug cases).

**7.** The situation that lead to the 1990 amendments to the MVFRL in which full tort and limited tort were incorporated was detailed in a noted work entitled *Pennsylvania Motor Vehicle Insurance*, which states, in part:

The main problem that precipitated the movement to repeal the No–Fault Act in 1984 was rising insurance costs. Ironically, reducing insurance rates was one of the promises of the No–Fault Act, but the reality was that No–Fault benefit insurance premiums increased 875% between July 1975 and September 1982.... [I]n 1984, the

Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), which took effect on October 1, 1984, replaced the No–Fault Act. The primary concerns in repealing the No–Fault Act were the spiraling costs of automobile insurance and the resultant increase in the number of uninsured motorists. The objective of the MVFRL was to provide broad coverage to assure the financial integrity of the policy holder. In fact, curtailing the spiraling cost of automobile insurance and protecting the public against loss caused by negligent motorists are the two most frequently mentioned reasons for the passage of the MVFRL.... By 1988 automobile insurance rates in Pennsylvania were the fifth highest in the country. In fact, insurance premiums were so high in Philadelphia that the number of uninsured operators was labeled as 'staggering.' Some alleged causes of the 'insurance crisis' were rising health care costs, uninsured motorists, lack of strict enforcement standards against driving under the influence, and proliferation of lawsuits. (Citations omitted). Ronca, J.R.; Sloane, L.A.; Lutz, D.L.; Shollenberger, T.A.; and Mundy, J.F.2001 at §§ 1.1, 1.2. *Pennsylvania Motor Vehicle Insurance: An Analysis of the*

*Rump v. Aetna Casualty and Surety Co.,* 551 Pa. 339, 710 A.2d 1093 (1998); *see also Lewis v. Erie Insurance Exchange,* 568 Pa. 105, 793 A.2d 143 (2002). Thus, the MVFRL should be construed to avoid rewarding motorists who intentionally neglected to purchase insurance. *McClung v. Breneman,* 700 A.2d 495 (Pa.Super.1997).

¶ 12 I am duly mindful that a concomitant purpose of the MVFRL is to provide coverage for injured parties. However, the result I reach in no way interferes with that purpose because my conclusion does not preclude recovery; it **limits** recovery. The majority suggests that such a reading of the statute punishes the children for the sins of the parent. This simply is not so. Even though these minors' parents failed to exercise financial responsibility by purchasing insurance, their children are not precluded from recovering against a negligent tortfeasor if their injuries are serious. Their recovery is simply limited to the same extent as those parents who have exercised financial responsibility yet chosen the limited tort option.

¶ 13 To allow unlimited recovery to the child of a parent who has placed no money into the premium pool, but to limit recovery to the child of a parent who has paid into that pool but elected the limited tort option does not comport with our obligation to interpret this Act in light of its dual and equally important objectives. Placing the child of an uninsured vehicle owner in a better position than the child of a parent who has chosen to exercise financial responsibility does not advance the legislative goals of the MVFRL. Regardless of the specter of criminal prosecution raised by the majority, its decision today produces an unreasonable result that is contrary to legislative intent, the applicable cannons of statutory construction, and common sense.

¶ 14 Having determined that the limited tort option applies, the question remains whether the minors herein meet the threshold for recovery under that option. Appellants concede that Heather did not sustain serious injury but contend that Joel did. A review of the record indicates that Joel sustained a vertical scar down his forehead that stops just above his eyebrow.

¶ 15 Our Supreme Court has held that the determination of whether a plaintiff has suffered serious injury must be made by a jury unless the evidence, taken in the light most favorable to the plaintiff, is such that reasonable minds could not differ on the conclusion that the plaintiff's injury was not serious. *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998). Section 1702 of the MVFRL defines serious injury as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." The issue in this case is whether permanent serious disfigurement occurred. Although there is an absence of Pennsylvania appellate authority on whether a single scar can constitute permanent serious disfigurement, guidance can be found in case law interpreting similar language in a New Jersey statute.

¶ 16 In *Falcone v. Branker,* 135 N.J.Super. 137, 342 A.2d 875 (1975), the Superior Court of New Jersey employed a sound analysis for determining when a scar constitutes permanent serious disfigurement for purposes of its statutory equivalent to the limited tort option of the MVFRL.[8]

*Financial Responsibility Law, Second Edition (2001 Revision).*

**8.** Although the New Jersey statute's wording provides that a plaintiff must suffer permanent "significant" disfigurement, the *Falcone*

The Court examined case law regarding the definition of permanent serious disfigurement in the workers' compensation area and concluded that to fall within that definition, the scar must impair the symmetry or appearance of the plaintiff such that he is unsightly, misshapen, imperfect, or deformed in some manner. The Court also opined that a facial scar that mars to such an extent as to attract attention would be a serious disfigurement. According to the *Falcone* court, whether a disfigurement fulfills the statutory definition is determined by the following objective factors: the scar's appearance, coloration, existence and size. It noted, however, that a scar that becomes progressively less apparent with time would not be permanent. *See also Hammer v. Township of Livingston*, 318 N.J.Super. 298, 723 A.2d 988 (1999).

¶ 17 In the present case, the scar is reddish and transcends Joel's forehead vertically. It certainly would attract attention. Applying the factors enumerated in *Falcone*, the scar is significant enough to create a jury question as to whether it constitutes permanent serious disfigurement.

¶ 18 Hence, I agree with the majority's conclusion that Joel is entitled to a jury trial but would have the jury determine whether Joel has sustained permanent serious disfigurement and whether he can recover under the limited tort option. I would affirm as to Heather.

¶ 19 JOHNSON and LALLY–GREEN, JJ. join.

court actually applied a case wherein the issue was whether the injured party suffered permanent "serious" disfigurement, concluding that the terms "significant" and "serious" were virtually synonymous.