David **COOPER** and Michael Cooper, Petitioners,

v.

The **ASPEN SKIING COMPANY**; The Aspen Valley Ski Club; John McBride, Jr.; and the United States Ski Association, Respondents.

No. 00SC885.

Supreme Court of Colorado, En Banc.

June 24, 2002.

Freeman & Freeman, Martin H. Freeman, Klein–Zimet, P.C., Herbert S. Klein, Michele Nelson Bass, Aspen, Colorado, Attorneys for Petitioners.

Higgins, Hopkins, McLain & Roswell, LLC, Stephen Hopkins, David McLain, Geoffrey N. Blue, Lakewood, Colorado, Attorneys for Respondents The Aspen Skiing Company; The Aspen Valley Ski Club; and John McBride, Jr.

Rietz and Smith, LLC, Peter W. Rietz, Jere K. Smith, Dillon, Colorado, Attorneys for Respondent United States Ski Association.

Chalat Law Offices, P.C., James H. Chalat, Denver, Colorado, Attorney for Amicus Curiae Colorado Trial Lawyers Association.

Justice RICE delivered the Opinion of the Court.

In 1995, petitioner David Cooper, then seventeen, suffered injuries, including blindness, when he lost control and crashed into a tree while training on a ski race course. David and his parents filed suit against the Aspen Valley Ski Club Inc. and David's coach, John McBride, Jr., (Defendants) alleging, among other claims, negligence. The trial court determined as a matter of law pursuant to C.R.C.P. 56(h) that a release signed by both David and his mother, Diane Cooper, before the injury occurred "should be enforced and act as a bar to claims of negligence against these defendants." (R. at v. VIII, p.1984.) In addition, the trial court determined as a matter of law that "defendants' motion for determination of law should be denied in part in so far as the motion seeks to enforce the indemnity provisions of the agreement against plaintiff, Diane Cooper." (*Id.*) David appealed [1] the trial court's order, and in *Cooper v. Aspen Ski Ass'n*, 32 P.3d 502 (Colo. App.2000), the court of appeals affirmed, holding that the release signed by David's mother was enforceable against David, even though he was a minor both when the release was signed and when the accident occurred.[2]

■ We granted certiorari to determine whether Colorado's public policy allows a parent to validate exculpatory provisions on

---

1. David's mother, Diane Cooper, did not contest the trial court's order that the release barred her own claims against Defendants.

2. On cross-appeal in *Cooper*, the Defendants argued that the trial court erred in determining that the indemnity provision in the release signed by David's mother was unenforceable. *Cooper*,

32 P.3d at 511. The court of appeals determined that the cross-appeal was moot, however, because it held that the release was enforceable against David, and this conclusion necessarily precluded a finding of liability against the Aspen Valley Ski Club. *Id.*

behalf of his minor child.[3] Specifically, we must resolve whether a parent may release the claims of a minor child for future injuries and whether a parent may enter into an indemnification agreement that shifts the source of compensation for a minor's claim from a tortfeasor to the parent. We hold that the public policy of Colorado affords minors significant protections that preclude a parent or guardian from releasing a minor's own prospective claim for negligence.[4] We also hold that an indemnity provision that shifts the source of compensation for negligence from the tortfeasor to the minor's parent or guardian creates an unacceptable conflict of interest between a parent/guardian and a minor and violates Colorado's public policy to protect minors. Accordingly, we reverse the court of appeals' judgment and remand the case to that court with instructions to return the case to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In 1995, seventeen-year-old petitioner David Cooper had been a member of the Aspen Valley Ski Club, Inc. (the Ski Club), for about nine years and was actively involved in competitive ski racing. At the beginning of the 1995–1996 ski season, David and his mother signed a form titled "Aspen Valley Ski Club, Inc. Acknowledgment and Assumption of Risk and Release" (the Release).

The Release relieved the Ski Club from:

any liability, whether known or unknown, even though that liability may arise out of negligence or carelessness on the part of persons or entities mentioned above. The undersigned Participant and Parent or Guardian agree to accept all responsibility for the risks, conditions and hazards which may occur whether or not they are now known.

The Release further stated:

... the undersigned Participant and Parent or Guardian HEREBY AGREE TO WAIVE, RELEASE, DISCHARGE, INDEMNIFY AND HOLD HARMLESS any and all claims for damages for death, personal injury or property damage which they may have or which may hereafter accrue as a result of any participation in an Aspen Valley Ski Club, Inc. program and related activities and events.... The undersigned Participant and Parent or Guardian further agree to forever HOLD HARMLESS and IDEMNIFY all persons and entities identified above, generally and specifically, from any and all liability for death, personal injury or property damage resulting in any way from participating in the activities and events described above. By signing this Acknowledgement and Assumption of Risk and Release as the Parent or Guardian, I am consenting to the participant's participation in the Aspen Valley Ski Club, Inc. programs and related activities and acknowledge that I understand that all risk, whether known or unknown, is expressly assumed by me and all claims, whether known or unknown, are expressly waived in advance.

---

**3.** We granted certiorari to consider: "Whether the public policy of Colorado allows a parent to release the claims of a minor child for possible future injuries from a recreational activity."

**4.** However, section 13–21–116(2.5)(a), 5 C.R.S. (2001) protects " 'persons,' be they individuals or entities who perform volunteer services" for designated types of organizations from liability. *Concerned Parents of Pueblo, Inc. v. Gilmore,* 47 P.3d 311, 313–14 (Colo.2002). Section 13–21–116(2.5)(a) does not, however, insulate the organization itself from liability. *Concerned Parents,* 47 P.3d at 312. Our holding does not affect the applicability of section 13–21–116(2.5) or our decision in *Concerned Parents;* rather section 13–21–116(2.5)(a) would preclude liability against volunteer leaders, volunteer assistants, volunteer

teachers, volunteer coaches, and volunteer trainers, with certain statutory limitations. § 13–21–116(2.5)(a).

We note, in addition, that risks other than a party's negligence may be present in a recreational activity. For example, a sport may present inherent dangers that can not be eliminated by the exercise of reasonable care. We do not consider this issue; nor do we rule on the assumption of risk and inherent risk provisions in legislative acts such as the Ski Safety Act of 1979.

Finally, we emphasize that our holding applies only to parental releases of liability for negligence and not to, for example, parental consent forms for medical services such as surgery and the like.

On December 30, 1995, David was training for a competitive, high speed alpine race. The course had been set by David's coach, defendant McBride. During a training run, David fell and collided with a tree, sustaining severe injuries, including the loss of vision in both eyes.

The trial court ruled that Diane Cooper's signature on the release bound her son, David, to the terms of the release and barred his claims against the Ski Club and McBride. The court of appeals affirmed, holding that based on a parent's fundamental liberty interest in the care, custody, and control of her child, David's mother had the right to release David's claims for possible future injuries. *Cooper*, 32 P.3d at 507. We granted certiorari and now reverse.

## II. STANDARD OF REVIEW

■ Appellate courts review a trial court's order granting or denying a motion for summary judgment de novo. *Pierson v. Black Canyon Aggregates*, No. 01SC161, 2002 Colo. LEXIS 424, at *12, —— P.3d ——, 2002 WL 1009283 (Colo. May 20, 2002). This is because such judgments "are rulings of law in the sense that they may not rest on the resolution of disputed facts." *Id.* (quoting *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1250 (Colo.1996)). Therefore, we decide today's issue de novo.

## III. ANALYSIS

### A. Validity of the Release

We must first determine whether Colorado's public policy allows parents to contractu-

ally release their child's future claims for injury caused by negligence.[5]

■ While it is a well-settled principle that "[a] minor during his minority, and acting timely on reaching his majority, may disaffirm any contract that he may have entered into during his minority," *Nicholas v. People*, 973 P.2d 1213, 1219 (Colo.1999); *Doenges–Long Motors v. Gillen*, 138 Colo. 31, 35–36, 328 P.2d 1077, 1080 (1958), we have never specifically addressed whether a parent or guardian may release a child's cause of action on his behalf[6] or whether Colorado's public policy allows a parent or guardian to serve as indemnitor for his minor child's claims against an indemnitee. As such, the issue in this case presents a significant question regarding the junction of contract law, tort law, and public policy.[7]

■ Here, we agree with the Washington Supreme Court that "there are instances where public policy reasons for preserving an obligation of care owed by one person to another outweigh our traditional regard for freedom of contract." *Scott v. Pac. W. Mountain Resort*, 119 Wash.2d 484, 834 P.2d 6, 11, 12 (1992) (holding that "to the extent a parent's release of a third party's liability for negligence purports to bar a child's own cause of action, it violates public policy and is unenforceable"). Accordingly, we hold that Colorado's public policy affords minors significant protections which preclude parents or guardians from releasing a minor's own prospective claim for negligence. We base our holding on our understanding of Colorado's public policy to protect children as reflected by legislation protecting minors as well as decisions from other jurisdictions,

**5.** In *Jones v. Dressel*, 623 P.2d 370 (Colo.1981), this court established a four-factor test to determine the validity of an exculpatory agreement. *Id.* at 376. However, because we rely on a public policy exception specifically relating to parental/guardian releases of a minor's claims to invalidate the exculpatory agreement, we need not consider the *Jones* factors to determine whether the exculpatory agreement in this case would have been valid under *Jones*.

**6.** In *Jones*, 623 P.2d 370, we noted that "the approval by a parent does not necessarily validate an infant child's contract." *Id.* at 372 n. 1. However, we determined that Jones ratified the contract by accepting the benefits of it when he

used the defendant's recreational skydiving facilities after reaching the age of majority, *Jones*, 623 P.2d at 374, and accordingly did not decide the issue we analyze today.

**7.** While we traditionally recognize a "strong policy of freedom of contract," *Allstate Ins. Co. v. Avis Rent–A–Car System, Inc.*, 947 P.2d 341, 346 (Colo.1997), we also recognize that "exculpatory agreements have long been disfavored." *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. .1998). Indeed, "[exculpatory clauses] stand at the crossroads of two competing principles: freedom of contract and responsibility for damages caused by one's own negligent acts." *Id.*

which we find persuasive. However, we note that this question is a matter of legislative prerogative, and, of course, the General Assembly could choose to address it differently.

### 1. Colorado's Public Policy

The General Assembly has demonstrated an on-going commitment to afford minors significant safeguards from harm by passing numerous statutes designed to protect minor children.[8] Most significant of these for purposes of this case are the protections accorded minors in Colorado in the post-injury claim context. Colorado laws do not allow a parent the unilateral right to foreclose a child's existing cause of action to recover for torts committed against him.[9] Rather, the General Assembly has granted minors a number of protections to safeguard their post-injury rights of recovery. Indeed, the Colorado Probate Code provides significant procedural protections for minors in the post-injury claim context.[10] This legislation creates mechanisms for the appointment of a conservator to protect a minor's settlement rights. § 15–14–403, 5 C.R.S. (2001); § 15–14–425(2)(t), 5 C.R.S. (2001). It also provides minors important protections by creating means by which the court may ratify the settlement of a minor's claims. § 15–14–412(1)(b), 5 C.R.S. (2001). Importantly, a parent may not act as a minor's conservator as a matter of right, but only when appointed by the court. § 15–14–413, 5 C.R.S. (2001).

Thus, we agree with the Utah Supreme Court and the Washington Supreme Court—both of which recently analyzed the same issue presented here—that "since a parent generally may not release a child's cause of action after injury, it makes little, if any, sense to conclude a parent has the authority to release a child's cause of action prior to an injury." *Scott*, 834 P.2d at 11–12; *accord Hawkins v. Peart*, 37 P.3d 1062, 1066 (Utah 2001).

Arguably, the differences between the two types of releases may weaken any comparison between them. *See* Angeline Purdy, *Scott v. Pacific West Mountain Resort: Erroneously Invalidating Parental Releases of a Minor's Future Claim*, 68 Wash. L.Rev. 457, 472 (1993)(arguing that while existing tort claims are vulnerable to parental mismanagement because of the financial pressure to accept inadequate settlements, outright parental dishonesty, and the existence of indemnity provisions in settlements, parents who release future claims do not have the same financial motivation to sign a release because—by signing the release before

---

8. *See generally, e.g.*, § 13–22–101, 5 C.R.S. (2001) (eighteen is minimum age of competence for people to independently enter into contracts, manage estates, and sue and be sued); § 16–11–201(4)(a)(II), 6 C.R.S. (2001) (possibility for increased criminal penalties for certain crimes committed against a child); § 17–22.5–405(5)(b) (same); § 17–27.9–103(1)(a) (same); § 18–3–412, 6 C.R.S. (2001) (same); § § 26–6–101 to 307, 8 C.R.S. (2001) (comprehensive regulations in the Child Care Licensing Act); § 42–4–236, 11 C.R.S. (2001) (unless exempted under subsection (3), mandatory use of child restraint systems in motor vehicles).

9. *See generally* 67A C.J.S. *Parent and Child* § 114, at 469 (1978) ("In the absence of statutory or judicial authorization, the parent has no authority, merely because of the parental relation, to waive, release, or compromise claims by or against the child. This rule applies to a waiver, settlement, or release of the child's right of action for a personal injury or other tort.").

10. For example, under section 15–14–403(1), 5 C.R.S. (2001) of the Colorado Probate Code, the "person to be protected" (in this case the minor), § 15–14–403(1)(a), 5 C.R.S. (2001) or "an individual interested in the estate, affairs, or welfare of the person to be protected," § 15–14–403(1)(b), 5 C.R.S. (2001), "may petition for the appointment of a conservator or for any other appropriate protective order." § 15–14–403(1). Unless qualified or limited by the court, § 15–14–425(1), 5 C.R.S. (2001), a conservator may "[p]ay or contest any claim, settle a claim by or against the estate of the protected person by compromise, arbitration, or otherwise." § 15–14–425(2)(t), 5 C.R.S. (2001): Furthermore, "[i]f a basis is established for a protective order with respect to an individual, the court, without appointing a conservator, may," § 15–14–412(1), 5 C.R.S. (2001), "[a]uthorize, direct, or ratify any other contract, trust, will or transaction relating to the protected person's property and business affairs, including a settlement of a claim, upon determining that it is in the best interest of the protected person." § 15–14–412(1)(b). Moreover, a parent may only act as a minor's conservator when appointed by the court. § 15–14–413, 5 C.R.S. (2001) (listing parents sixth in prioritized list of eligibility for court appointment as conservator.) ..

injury—the parent will ultimately be required to pay for medical care).

We do not find these distinctions meaningful or persuasive, however. It may be true that parents in the pre-injury setting have less financial motivation to sign a release than a parent in the post-injury setting who needs money to care for an injured child. Nonetheless, the protections accorded minors in the post-injury setting illustrate Colorado's overarching policy to protect minors, regardless of parental motivations, against actions by parents that effectively foreclose a minor's rights of recovery. Thus, while a parent's decision to sign a pre-injury release on his child's behalf may not be in "deliberate derogation of his child's best interests," Purdy, *supra*, at 474, the effect of a release on the child in either the pre-injury context or the post-injury one is the same. If parents are unwilling or unable to care for an injured child, he may be left with "no recourse against a negligent party to acquire resources needed for care and this is true regardless of when relinquishment of the child's rights might occur." *Scott*, 834 P.2d at 12. In addition, while pre-injury releases might be less vulnerable to mismanagement, children still must be protected against parental actions—perhaps rash and imprudent ones—that foreclose all of the minor's potential claims for injuries caused by another's negligence.

Thus, given our historical regard for the special needs of minors and the fact that both a pre-injury release and a post-injury one work to deprive a child of rights of recovery, the fact that a parent is not afforded unilateral power to foreclose a minor's rights in the post-injury context supports our holding that he may not do so in the pre-injury setting either.

Moreover, our case law firmly supports the proposition that Colorado's public policy works to protect minors from parental actions that foreclose a minor's rights to recovery. *See, e.g., Elgin v. Bartlett*, 994 P.2d 411, 414–15 (Colo.1999) (holding that the statute of limitations applicable to a minor's cause of action for medical negligence does not begin to run until the minor reaches the age of eighteen, unless the minor has a court-appointed legal representative, because the language of the applicable statutory sections reflects the General Assembly's policy choice to operate literally for the protection of the minor by not allowing parents to remove or waive a minor child's legal disability by instituting a next friends suit, and thereby refusing to penalize the minor for the parents' action); *Rojhani v. Arenson*, 929 P.2d 23, 26 (Colo.App.1996) (concluding that parents' failure as next friends to timely file notice of minor's injury did not preclude the minor's suit because the minor was not capable of appreciating his injury and because no guardian or personal representative was appointed); *Cintron v. City of Colo. Springs*, 886 P.2d 291, 295 (Colo.App.1994) (concluding that although a parent may voluntarily undertake to aid the assertion of a child's claim by acting as a next friend, a minor may not be charged with the parents' failure, acting as next friends, to discover the minor's injury or to provide notice thereof on the parents behalf); *cf., e.g., In re Miller,* 790 P.2d 890, 892–93 (Colo.App.1990) (reasoning that "[t]he law and policy of this state is that the needs of the children are of paramount importance and cannot be altered by the parties" and holding that an agreement between parents regarding child support is not enough, in and of itself, to allow deviation from the child support guidelines and that a trial court must presume, unless rebutted, that child support obligations must be set in the amount specified in the statutory schedule).

[7–9] To allow a parent or guardian to execute exculpatory provisions on his minor child's behalf would render meaningless for all practical purposes the special protections historically accorded minors. In the tort context especially, a minor should be afforded protection not only from his own improvident decision to release his possible prospective claims for injury based on another's negligence, but also from unwise decisions made on his behalf by parents who are routinely asked to release their child's claims for liability. In Colorado, it has long been the rule that courts owe a duty to "exercise a watchful and protecting care over [a minor's] interests, and not permit his rights to be waived, prejudiced or surrendered either by

his own acts, or by the admissions or pleadings of those who act for him." *Seaton v. Tohill,* 11 Colo.App. 211, 216, 53 P. 170, 172 (1898). Nearly one hundred years later we confirmed this steadfast principle: "Courts are charged with the responsibility to take special care in protecting the rights of minor children." *Abrams v. Connolly,* 781 P.2d 651, 658 (Colo.1989). Thus, a minor is accorded special protection, and to allow a parent to release a child's possible future claims for injury caused by negligence may as a practical matter leave the minor in an unacceptably precarious position with no recourse, no parental support, and no method to support himself or care for his injury.[11]

### 2. Other Jurisdictions

Our holding that parents may not release a minor's prospective claim for negligence comports with the vast majority of courts that have decided the issue. In fact, the highest courts of two of our sister states, Utah and Washington, recently analyzed the precise issue facing us today, and both concluded that a parent may not execute a release on behalf of his minor child for prospective claims sounding in negligence.

In *Hawkins v. Peart,* 37 P.3d 1062 (Utah 2001), eleven-year-old Jessica Hawkins was injured when she was thrown from a horse during a trail ride with her family. *Id.* at 1063. Jessica's mother had signed a release containing a waiver of liability and an indemnity provision.[12] *Id.* Relying on a public policy exception specifically relating to releases of a minor's claims and reasoning that Utah's statutes and rules favored the protection of minors with respect to contractual obligations, the Utah Supreme Court held that a parent may not release a minor's prospective claim for negligence. *Id.* at 1065–66.

In addition, the facts of *Scott v. Pacific West Mountain Resort,* 119 Wash.2d 484, 834 P.2d 6 (1992), are remarkably similar to those presented in this case. In *Scott,* twelve-year-old Justin Scott, a student of a ski school, sustained severe head injuries while skiing a slalom race course that had been set by the ski school's owner. *Scott,* 834 P.2d at 8. Prior to the injury, Justin's mother had signed a ski school application

---

11. The court of appeals based its holding that a parent may execute a pre-injury release on behalf of his minor child on parents' fundamental right under the Due Process Clause to make decisions "concerning the care, custody, and control of their children." *Cooper,* 32 P.3d at 507 (citing *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). While we certainly agree that parents have a liberty interest in the "care, custody and control of their children," *Troxel v. Granville,* 530 U.S. at 65, 120 S.Ct. 2054, we do not believe that right encompasses a parent's decision to disclaim a minor's possible future recovery for injuries caused by negligence by signing a release on the minor's behalf. A parental release of liability on behalf of his child is not a decision that implicates such fundamental parental rights as the right to "establish a home and bring up children," *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), and the right "to direct the upbringing and education of children under their control," *Pierce v. Soc'y of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). Moreover, it does not implicate a parent's "traditional interest ... with respect to the religious upbringing of their children," *Wisconsin v. Yoder,* 406 U.S. 205, 214, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), or such medical decisions as a parent's right to "retain a substantial ... role" in the decision to voluntary commit his child to a mental institution (with the caveat that the child's rights and the physician's independent judgment also plays

a role), *Parham v. J.R.,* 442 U.S. 584, 604, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); rather a parental release on behalf of a child effectively eliminates a child's legal right to sue an allegedly negligent party for torts committed against him. It is, thus, not of the same character and quality as those rights recognized as implicating a parents' fundamental liberty interest in the "care, custody, and control" of their children.

Furthermore, even assuming arguendo, that a parental release on behalf of a minor child implicates a parent's fundamental right to the care, custody, and control of his child, this right is not absolute. *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *People v. Shepard,* 983 P.2d 1, 4 (Colo.1999). Indeed, "[a]cting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor and in many other ways." *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (footnotes omitted). In fact, "in order to protect a child's well-being, the state may restrict parental control." *Shepard,* 983 P.2d at 4.

12. The Utah court's analysis of the parental indemnity provision is discussed in the next section of this opinion.

that included an exculpatory clause relieving the school from any liability for its own negligence. *Id.* at 8–9. The Washington Supreme Court reasoned that "since a parent generally may not release a child's cause of action after injury, it makes little, if any, sense to conclude a parent has the authority to release a child's cause of action prior to an injury." *Id.* at 11–12. Accordingly, the court held, "to the extent a parent's release of a third party's liability for negligence purports to bar a child's own cause of action, it violates public policy and is unenforceable." *Id.* at 12.

Finally, other courts across the nation that have considered the issue have determined that a parent may not release a minor's prospective cause of action. *See, e.g., Apicella v. Valley Forge Military Acad. & Junior Coll.*, 630 F.Supp. 20, 24 (E.D.Pa.1985) ("Under Pennsylvania law, parents do not possess the authority to release the claims or potential claims of a minor child merely because of the parental relationship."); *Fedor v. Mauwehu Council, Boy Scouts of Am.*, 21 Conn. Supp. 38, 143 A.2d 466, 468 (1958) (ruling that "it is doubtful that either the mother or father of this minor plaintiff had the power or authority to waive his rights against the defendant arising out of acts of negligence on the part of the defendant" and sustaining the demurrer of the plaintiff to the special defense that the waiver of all claims for damages absolved the defendant of liability); *Meyer v. Naperville Manner, Inc.*, 262 Ill. App.3d 141, 199 Ill.Dec. 572, 634 N.E.2d 411, 415 (1994) ("Since the parent's waiver of liability was not authorized by any statute or judicial approval, it had no effect to bar the minor child's (future) cause of action...."); *Doyle v. Bowdoin Coll.*, 403 A.2d 1206, 1208 n. 3 (Me.1979) (stating in dicta that "a parent, or guardian, cannot release the child's, or ward's, cause of action"); *Fitzgerald v. Newark Morning Ledger Co.*, 111 N.J.Super.

104, 267 A.2d 557, 559 (Law Div.1970) (concluding that release and indemnity provision signed by father on behalf of his minor son was void as against public policy); *Alexander v. Kendall Cent. Sch. Dist.*, 221 A.D.2d 898, 634 N.Y.S.2d 318, 319 (1995) (stating in dicta that "a minor is not bound by a release executed by his parent"); *Childress v. Madison County*, 777 S.W.2d 1, 7 (Tenn.Ct.App. 1989) (holding that mother could not execute a valid release or exculpatory clause on behalf of her minor son); *Munoz v. II Jaz Inc.*, 863 S.W.2d 207, 209–10 (Tex.Ct.App.1993) ("We hold that section 12.04(7) of the Family Code, which empowers a parent to make legal decisions concerning their child, does not give parents the power to waive a child's cause of action for personal injuries. Such an interpretation of the statute would be against the public policy to protect minor children."); *see also Int'l Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 213, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) (White, J., concurring) (stating the general rule that parents cannot waive causes of action on behalf of their children). *But see Hohe v. San Diego Unified Sch. Dist.*, 224 Cal.App.3d 1559, 274 Cal.Rptr. 647, 649–50 (1990) (holding that parent may contract for child and therefore release signed on child's behalf by parent is valid);[13] *cf., Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 696 N.E.2d 201, 207 (1998) (holding that "parents have the authority to bind their minor children to exculpatory agreements in favor of volunteers and sponsors of nonprofit sports activities where the cause of action sounds in negligence");[14] *Mohney v. USA Hockey, Inc.*, 77 F.Supp.2d 859 (N.D.Ohio 1999) (applying *Zivich* holding and ruling that "[n]othing in the *Zivich* opinion indicates that its holding should be limited to nonprofit sports organizations that are local in scope"), *aff'd in part, rev'd in part on*

**13.** However, the *Hohe* court relied on *Doyle v. Giuliucci*, 62 Cal.2d 606, 43 Cal.Rptr. 697, 401 P.2d 1 (1965), which only allowed a parent to bind a child to the arbitration forum. *Doyle*, 43 Cal.Rptr. 697, 401 P.2d at 2–3.

**14.** Although Ohio's General Assembly later enacted legislation affording "qualified immunity to unpaid athletic coaches and sponsors of athletic

events," *Zivich*, 696 N.E.2d at 205, at the time the *Zivich* case arose, Ohio did not have legislation providing volunteers any immunity from liability. Subsequently, the Ohio legislature repealed these laws. *See* Ohio Rev.Code Ann. § 2305.381 (Anderson 2002) (repealed 2001); Ohio Rev.Code Ann. § 2305.382 (Anderson 2002) (repealed 2001).

*other grounds, Mohney v. USA Hockey, Inc.,* 5 Fed.Appx. 450 (6th Cir.2001).

Accordingly, in this case, Diane Cooper's execution of the release did not act as a release of the claims of her minor son David.

## B. PARENTAL INDEMNITY PROVISIONS

Finally, we consider the validity of parental indemnity provisions.[15] As a practical matter, release and indemnity provisions in contracts signed by parents or guardians on behalf of their minor children go hand-in-hand: having invalidated release provisions, it would be contradictory to then effectively undercut a minor's rights to sue by allowing indemnity clauses that make such suits for all realistic purposes unlikely.

Thus, we agree with the reasoning of those courts invalidating parental indemnity provisions that a minor child would be unlikely to pursue claims if his parent or guardian served as the ultimate source of compensation for the negligent party's torts, and that—if the child did bring a cause of action—family discord would likely result. *See Hawkins,* 37 P.3d at 1067 (reasoning that "an indemnification from negligence that specifically makes a parent the ultimate source of compensation would likely result in inadequate compensation for the minor or family discord" and holding that parental indemnification provisions are invalid); *see also, e.g., Valdimer v. Mount Vernon Hebrew Camps, Inc.,* 9 N.Y.2d 21, 210 N.Y.S.2d 520, 172 N.E.2d 283, 285 (1961) (concluding that post-injury parental indemnification agreements thwart state's protective policy by discouraging infant to bring claim or creating family disharmony if infant elects to press his claim); *Ohio Cas. Ins. Co. v. Mallison,* 223 Or. 406, 354 P.2d 800, 802–03 (1960) (in post-injury parental indemnification setting, reasoning that a child would be unlikely to pursue claims if agreement required parent to indemnify defendant).

Moreover, the effect of a parental indemnity agreement to assure that a negligent party will not be held financially responsible for that party's torts committed against a minor undermines a parent's duty to protect the best interests of the child. Thus, we also agree with the Utah Supreme Court that parental indemnity provisions "can only serve to undermine the parent's fundamental obligations to the child." *Hawkins,* 37 P.3d at 1067; *see also, e.g., Fitzgerald,* 267 A.2d at 559 (concluding that release and indemnity provision signed by father on behalf of his minor son was void as against public policy because the agreement may have conflicted with the father's duty to his son because the father may prevent infant from bringing suit since the father would ultimately be responsible under indemnity provision); *Childress,* 777 S.W.2d at 7 (holding that "[i]ndemnification agreements executed by a parent or guardian in favor of tortfeasors, actual or potential, committing torts against an infant or incompetent, are invalid as they place the interests of the child or incompetent against those of the parent or guardian").

 Therefore, we also hold that parental indemnity provisions violate Colorado's public policy to protect minors and create an unacceptable conflict of interest between a minor and his parent or guardian.

## IV. CONCLUSION

In summary, we hold that Colorado's public policy disallows a parent or guardian to execute exculpatory provisions on behalf of his minor child for a prospective claim based on negligence. Specifically, we hold that a parent or guardian may not release a minor's prospective claim for negligence and may not indemnify a tortfeasor for negligence committed against his minor child. Therefore, we reverse the court of appeals' judgment with instructions to that court to return the case to the trial court for further proceedings consistent with this opinion.

---

**15.** Though this issue was not specifically encompassed within the question on which we granted certiorari, given our holding that Diane Cooper could not contractually release David's future claims for injury caused by negligence, and to assist the court on remand, as well as to conserve scarce judicial resources, we address the validity of parental indemnification provisions.