FILED
United States Court of Appeals
Tenth Circuit

May 7, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KIMBERLY N. SQUIRES,

        Plaintiff - Appellant,

v.

BRECKENRIDGE OUTDOOR
EDUCATION CENTER,

        Defendant - Appellee.

No. 12-1199

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:10-CV-00309-CBS-BNB)**

---

Michael A. Sink of Perkins Coie LLP, Denver, Colorado (Robert N. Miller and
Stephanie E. Dunn of Perkins Coie LLP, Denver, Colorado; Gregory A. Gold of
The Gold Law Firm, LLC, Greenwood Village, Colorado; and T. Thomas Metier
of Metier Law Firm, LLC, Fort Collins, Colorado, with him on the brief), for
Plaintiff - Appellant.

David Werber (John W. Grund, Deana R. Dagner, and Joan S. Allgaier on the
brief) of Grund • Dagner, P.C., Denver, Colorado, for Defendant - Appellee.

---

Before **HARTZ**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Plaintiff Kimberly Squires filed this diversity action against Defendant

Breckenridge Outdoor Education Center asserting claims for negligence and gross negligence following a ski accident in which she was injured. The magistrate judge granted Defendant's motion for summary judgment in part, concluding Plaintiff's mother, Sara Squires, had validly released any claim for negligence against Defendant by signing an acknowledgment of risk and release of liability. Plaintiff now appeals, arguing summary judgment was inappropriate because the Release is unenforceable for three reasons: (1) the Release is as an invalid exculpatory agreement; (2) Mrs. Squires's decision to sign the Release was not voluntary and informed, as required by Colorado Revised Statute Section 13-22-107; and (3) to the extent the Release is otherwise enforceable, it is nevertheless voidable because it was procured through fraud.

## BACKGROUND

In 2008, Plaintiff, a legally blind child with cerebral palsy and cognitive delays, was severely injured while skiing at Breckenridge Ski Resort in Colorado. Plaintiff was in Breckenridge on a ski trip with the group Camp Fire USA, a non-profit organization dedicated to providing children, including children with disabilities, with opportunities and experiences for growth. Camp Fire USA had contracted with Defendant for a five-day wilderness program that included skiing, a ropes course, and snow tubing.

Before the trip, Defendant sent documents regarding the trip to Camp Fire USA, which in turn circulated them to the participants' parents, including Mrs.

Squires. The documents included a "Letter to Students, Parents and Guardians" (App. at 209 (capitalization omitted)) with an accompanying "Acknowledg[]ment of Risk & Release of Liability" (App. at 210 (capitalization omitted)).[1] The Letter states, in pertinent part:

### LETTER TO STUDENTS, PARENTS AND GUARDIANS

Greetings from Breckenridge! The BOEC staff looks forward to having you, your child or your family member join us on a course and would like to share the following information about who we are, what we do and the risks involved.

The Breckenridge Outdoor Education Center (BOEC), a non-profit organization in operation since 1976, provides outdoor adventure programs for people of all abilities. We offer programs for groups and individuals. All courses are tailored to the specific goals and abilities of our students.

. . . .

All of our activities are conducted in a manner consistent with the

---

[1] It is somewhat unclear whether the Release signed by Mrs. Squires was presented to her as a separate document from the Letter or as a single document with the Letter printed on one side and the Release printed on the reverse. The Letter itself refers to the Release "on the reverse side of this letter." (App. at 209.) Plaintiff likewise initially represented the Release appeared on the reverse of the Letter. (Appellant's Opening Br. at 6 ("On the back of the form cover letter, is a standardized "Acknowledg[]ment of Risk & Release of Liability" . . . .").) However, during oral argument, Plaintiff's counsel maintained this was a disputed issue. (Oral Argument at 4:03-18 ("Some copies of the Release are standalone copies, and one copy happens to have a bleed-over language from the cover letter. It's not clear . . . that that's how that actually occurred when the Release was given to [Mrs. Squires] for signature.") It is undisputed, however, that the Release the director of Camp Fire USA sent to the participants "included the cover letter that explained the waiver" (App. at 207), and that the two documents were sent as a single attachment (App. at 404, 407, 408).

highest standards, as defined by the Association for Experiential Education (AEE). The BOEC is accredited by AEE, who independently reviews the policies, practices and educational components of applicant organizations and accredits those that meet their high standards. All activities offered are designed to pose appropriate challenges for students. These challenges provide a medium for adventure, learning and personal growth. Your ski lesson or course will involve risk, which may be greater than most people encounter in their daily lives. Providing high quality programs in a risk-managed environment is a priority at the BOEC. It is, however, impossible to eliminate all risks. It is very important that you follow all directions given by staff and that you ask questions whenever a procedure or activity is unclear to you.

While the BOEC maintains rigorous standards, it is in everyone's best interest that risks are disclosed, understood, and assumed prior to participation. After you have reviewed the acknowledg[]ment of risk and waiver of liability on the reverse side of this letter and if you understand and agree with its contents, please sign in the appropriate places. If you are the parent or legal guardian of a student, please read both sides of this document to the student, and if you both agree and understand their content, place YOUR signature in the three appropriate places.

If you have any questions or comments, please do not hesitate to contact us. We welcome your suggestions and feedback.

(App. at 209.)

The accompanying Release provides:

## ACKNOWLEDGMENT OF RISK AND RELEASE OF LIABILITY (REQUIRED)

In consideration of being allowed to participate in any way in Breckenridge Outdoor Education Center (BOEC) programs, and related events and activities . . . I, and/or the minor student, . . . the undersigned:

1.      Understand that although the BOEC has taken precautions to provide proper organization, supervision, instruction and equipment for each course, it is impossible for the BOEC to guarantee absolute safety.

Also, I understand that I share the responsibility for safety during all activities, and I assume that responsibility. I will make my instructors aware to the best of my ability of any questions or concerns regarding my understanding of safety standards, guidelines, procedures and my ability to participate at any point during any activity.

2. Understand that risks during outdoor programs include but are not limited to loss or damage to personal property, injury, permanent disability, fatality, exposure to inclement weather, slipping, falling, insect or animal bites, being struck by falling objects, immersion in cold water, hypothermia (cold exposure), hyperthermia (heat exposure), and severe social or economic losses that may result from any such incident. I also understand that such accidents or illnesses may occur in remote areas without easy access to medical facilities or while traveling to and from the activity sites. Further, there may be other risks not known to me or not reasonably foreseeable at this time.

3. Agree that prior to participation, I will inspect, to the best of my ability, the facilities and equipment to be used. If I believe anything is unsafe, I will immediately advise the BOEC staff present of such condition and refuse to participate.

4. Assume all the foregoing risks and accept personal responsibility for the damages due to such injury, permanent disability or death resulting from participating in any BOEC activity.

I hereby release the BOEC, its successors, representatives, assigns, and employees from any and all claims, demands, and causes of action, whether resulting from negligence or otherwise, of every nature and in conjunction with a BOEC activity.

(App. at 210.)

Plaintiff and her mother signed the Release on January 13, 2008. On that date, Mrs. Squires was admittedly aware that her daughter's trip to Breckenridge and participation in Defendant's program would include skiing, although she claims she was unaware of the precise equipment and methods her daughter would be using. Once in Breckenridge, Plaintiff was paired with a BOEC instructor and equipped with a bi-ski. On the second run of the first day of skiing, Plaintiff was

injured when another, unrelated, skier lost control and skied into the tethers connecting Plaintiff and her instructor. The force of the collision caused the instructor to lose control of the tethers, and Plaintiff continued unrestrained down the trail and into a group of trees. She was injured when her bi-ski collided with a tree.

Following the accident, Plaintiff filed this action claiming Defendant's negligence and gross negligence caused her injuries. Defendant moved for summary judgment, arguing the Release barred Plaintiff's negligence claim and there was no evidence to support her gross negligence claim. The magistrate judge granted summary judgment in favor of Defendant on Plaintiff's negligence claim, concluding Plaintiff's mother had executed an enforceable exculpatory agreement that clearly and unambiguously expressed the parties' intent to extinguish Defendant's liability, and her decision to do so was voluntary and informed. The magistrate judge, however, denied Defendant's motion on Plaintiff's gross negligence claim. This claim proceeded to a jury, which found Defendant not liable. Plaintiff now appeals the grant of summary judgment on her negligence claim.

## DISCUSSION

"We review a district court's decision to grant summary judgment de novo, applying the same standard as the district court." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (internal quotation marks omitted). Summary

judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Colorado law applies in this diversity case.

## I. ENFORCEABILITY OF THE RELEASE

Plaintiff argues the Release is unenforceable and, therefore, does not bar her negligence claim. She reasons that the Release is invalid under the four-part test articulated in *Jones v. Dressel*, 623 P.2d 370 (Colo. 1981), and that her mother did not make an informed decision, as required by Colorado Revised Statute Section 13-22-107.

### A. Validity Under Jones

In Colorado, "[a]greements attempting to exculpate a party from that party's own negligence have long been disfavored." *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 783 (Colo. 1989). However, "[e]xculpatory agreements are not necessarily void." *Id.* at 784. In determining whether an exculpatory agreement is valid, Colorado courts consider four factors: "(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." *Jones*, 623 P.2d at 376. Plaintiff challenges only the magistrate judge's conclusion on the fourth factor.

Under the fourth factor, "use of the specific terms 'negligence' and 'breach of warranty' are not invariably required for an exculpatory agreement to shield a

party from claims based on negligence and breach of warranty." *Heil Valley*, 784 P.2d at 785. Rather, "[t]he inquiry should be whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed." *Id.* In making this determination, Colorado courts examine "the actual language of the agreement for legal jargon, length and complication, and any likelihood of confusion or failure of a party to recognize the full extent of the release provisions." *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004).

The Release signed by Plaintiff and her mother clearly and unambiguously waives any negligence claims Plaintiff might have brought against Defendant. The Release begins by indicating it is signed "[i]n consideration of being allowed to participate in any way in Breckenridge Outdoor Education Center (BOEC) programs, and related events and activities." (App. at 104.) It then warns that "it is impossible for the BOEC to guarantee absolute safety," and identifies the potential risk of "loss or damage to personal property, injury, permanent disability, [and] fatality." (*Id.*) The Release concludes, after only five short paragraphs, by stating in plain terms that the signor "hereby release[s] the BOEC, its successors, representatives, assigns, and employees *from any and all claims, demands and causes of action, whether resulting from negligence or otherwise, of every nature and in conjunction with a BOEC activity.*" (*Id.* (emphasis added).) We perceive no ambiguity in this language. *See Mincin v. Vail Holdings, Inc.*,

-8-

308 F.3d 1105, 1113 (10th Cir. 2002) ("The agreement covers 'any and all claims I might state . . . including those claims based on negligence or breach of warranty.' . . . There is nothing ambiguous about this portion of the agreement." (first alteration in original)).

Plaintiff, however, contends the Release does not satisfy the fourth *Jones* factor because it failed to include that Plaintiff would be skiing using a bi-ski and failed to disclose specific risks associated with this form of adaptive skiing. She argues that Colorado law requires the Release to identify the specific activity being engaged in and describe specific associated risks. In support of this position, Plaintiff quotes from several other releases that have been upheld and claims it was their adequate detailing of risks that led the courts to conclude they were valid under the fourth *Jones* factor. However, even though the releases quoted by Plaintiff contain more detailed descriptions of the associated risks, their validity did not turn on this fact. Notably, none of the cases Plaintiff relies on evaluated the sufficiency of the description of the risks.

Contrary to Plaintiff's argument, Colorado law does not require that exculpatory agreements refer to the specific activity in which the plaintiff participated and was injured. *See Forman v. Brown*, 944 P.2d 559, 563-64 (Colo. App. 1996) (concluding a release that did not mention the specific activity in which the plaintiff was injured was nevertheless valid because it "unambiguously released defendants from liability for injuries occurring during associated

scheduled or unscheduled activities"); *Brooks v. Timberline Tours, Inc.*, 127 F.3d 1273, 1274-75 (10th Cir. 1997) (concluding a release that did not include the specific activity and referred only to "the activity I am about to voluntarily engage in" was valid under *Jones*). Nor does it require "that an exculpatory agreement describe in detail each specific risk that the signor might encounter. Rather, an exculpatory agreement bars a claim if the agreement clearly reflects the parties' intent to extinguish liability for that type of claim." *Lahey v. Covington*, 964 F. Supp. 1440, 1445 (D. Colo. 1996), *aff'd sub nom. Lahey v. Twin Lakes Expeditions, Inc.*, No. 96-1438, 1997 WL 265093 (10th Cir. May 20, 1997) (unpublished) (citation omitted). The Release clearly reflects precisely such an intent—Plaintiff and her mother agreed, "[i]n consideration of being allowed to participate in . . . [Defendant's] programs, and related events and activities" to "release [Defendant] from any and all claims . . . and causes of action, whether resulting from negligence or otherwise, of every nature and in conjunction with a [BOEC] activity." (App. at 104.)

Plaintiff additionally argues the Release is ambiguous because it does not specifically release claims resulting from the negligence of third parties, such as the skier who collided with Plaintiff, and because it inconsistently allocates risks between herself and Defendant. Plaintiff raises her first theory of ambiguity for the first time on appeal. Because this argument was not properly preserved, we do not consider it. *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir.

-10-

1993) ("[A] party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory."). Turning then to Plaintiff's second theory of ambiguity, we agree with the magistrate judge's conclusion that the Release is not reasonably susceptible to her interpretation, which strains logic. Plaintiff specifically argues the portion of the Release that releases Defendant from liability is rendered ambiguous by the following sentence: "I understand that I share the responsibility for safety during all activities, and I assume that responsibility." (App. at 104.) She contends that by "discussing two alternate allocations of risk in the same document, the Release does not clearly and unambiguously express the intent of the parties, and thus, is unenforceable." (Appellant's Opening Br. at 23.) However, these two provisions create no such ambiguity. The sentence on which Plaintiff relies clearly expresses the participant's agreement to share in the *responsibility of participating in a safe manner*, whereas the release provision clearly expresses the participant's intent to *release Defendant from liability*. As the magistrate judge concluded, the two are not mutually exclusive, and the first provision makes it no less clear that Plaintiff's mother intended to release Defendant from liability for any negligence claim.

Because the Release contains clear and unambiguous language demonstrating Plaintiff's mother intended to release any negligence claims Plaintiff might have against Defendant, it is valid and enforceable under *Jones*.

-11-

*B. Informed Decision Under Colorado Revised Statute Section 13-22-107*

We turn then to whether Mrs. Squires's consent to the Release was voluntary and informed, as required by Section 13-22-107. Plaintiff argues it was not because her mother did not understand the risks involved with adaptive skiing and, specifically, the use of bi-skis.

In 2002, the Colorado Supreme Court held "that Colorado's public policy disallows a parent or guardian to execute exculpatory provisions on behalf of his minor child for a prospective claim based on negligence." *Cooper v. Aspen Skiing Co.*, 48 P.3d 1229, 1237 (Colo. 2002), *superseded by statute*, Colo. Rev. Stat. § 13-22-107(3). The following year, the General Assembly superseded *Cooper* through enactment of Section 13-22-107(3). Under this section, "[a] parent of a child may, on behalf of the child, release or waive the child's prospective claim for negligence." Colo. Rev. Stat. § 13-22-107(3). The statute "declare[s] that parents have a fundamental right to make decisions on behalf of their children, including deciding whether the children should participate in risky activities." *Wycoff v. Grace Cmty. Church of the Assemblies of God*, 251 P.3d 1260, 1264 (Colo. App. 2010). "So long as the decision is voluntary and informed, the decision should be given the same dignity as decisions regarding schooling, medical treatment, and religious education . . . ." Colo. Rev. Stat. § 13-22-107(1)(a)(V).

The Colorado Court of Appeals has "assume[d] that the General Assembly was aware of the *Jones* test when it enacted section 13-22-107(1)(a)(V), but required something *more* for the waiver of a minor's prospective negligence claims." *Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 952 (Colo. App. 2011) (citation omitted). In addition to the *Jones* factors, "[t]he General Assembly required that the consent to waiver by a parent be 'voluntary and informed.'" *Id.* "A parent's decision is informed when the parent has sufficient information to assess the potential degree of risks involved, and the extent of possible injury." *Id.*

Since the enactment of Section 13-22-107, the Colorado Supreme Court has not addressed whether a release satisfies the voluntary and informed requirement of Section 13-22-107(1)(a)(V). We must therefore attempt to predict how Colorado's highest court would interpret this Section. *See FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000). In doing so, we "consider . . . cases from the Colorado Court of Appeals only as they may aid our ability to predict how the Colorado Supreme Court might decide." *Browning v. Am. Family Mut. Ins. Co.*, 396 F. App'x 496, 502 n.14 (10th Cir. 2010).

The Colorado Court of Appeals has twice considered whether a parent's consent to release prospective negligence claims on behalf of a minor child was voluntary and informed, as required by Section 13-22-107(1)(a)(V). On the first occasion, the Colorado Court of Appeals determined it "need not set forth . . .

-13-

precisely how much information is required for a parental release to satisfy the statute" because "[t]here is *no* information in [the] one-page registration form describing the event activities, much less their associated risks." *Wycoff*, 251 P.3d at 1264. There, the plaintiff was injured while being towed in an innertube behind an ATV on a frozen lake as part of her participation in a three-day event called "Winterama 2005." *Id.* at 1263. Before attending the event, the plaintiff's mother signed a one-page registration and information form, which contained a purported release in the following paragraph:

> I give permission for my child to participate in . . . Winterama 2005 and all activities associated with it. I further give consent for any medical treatment necessary to be given to my child in case of injury or sickness. *I will not hold Grace Community Church or it's [sic] participants responsible for any liability which may result from participation.* I also agree to come and pick up my child should they not obey camp rules.

*Id.* (emphasis and correction in original). Although the plaintiff knew the Winterama activities would include riding on an ATV-towed innertube, her mother did not. The court concluded that the mother's waiver was not informed because the registration and information form did "not indicate what the activities would involve and certainly d[id] not suggest they would include ATV-towed inner-tube excursions around a frozen lake." *Id.* at 1264. As a result, there was no information from which the plaintiff's parents could "assess the degree of risk and the extent of possible injuries" from her participation in Winterama. *Id.* at 1265.

Shortly after the *Wycoff* decision, the Colorado Court of Appeals again addressed whether a parent's consent to release prospective negligence claims on behalf of her child was informed. Borrowing from the language used in *Wycoff*, the court began by stating, "A parent's decision is informed when the parent has sufficient information to assess the potential degree of risks involved, and the extent of possible injury." *Hamill*, 262 P.3d at 952 (citing *Wycoff*, 251 P.3d at 1265). In addressing the degree of risk, the court concluded the plaintiff's mother was sufficiently informed about the risks involved in horseback riding, the activity in which the plaintiff was injured, because she "knew her daughter would be riding horses and she was advised that there were risks, known and unknown, associated with the activity." *Id.* at 953. In reaching this conclusion, the court first relied on the undisputed fact that the plaintiff's mother "knew the activities [the camp] offered," because her daughter "had attended [the camp] and ridden the camp horses for two years before the accident." *Id.* at 952. In addition, "[t]he agreement clearly indicated that horseback riding was an activity available to campers." *Id.* The agreement further identified some of the "risks associated with participation in any camping activities," and emphasized that "a complete listing of inherent and other risks is not possible" and there are even "risks which cannot be anticipated." *Id.* at 949 (emphasis omitted). The court finally considered the fact that the plaintiff's mother "never contacted [the camp] to discuss the release form, and had no questions about the language of the release

-15-

form when she signed it." *Id.* at 953. In light of all of this evidence, the court concluded the plaintiff's mother was adequately informed of the risks involved with horseback riding. The fact that she "may not have contemplated the precise mechanics of her daughter's fall d[id] not invalidate the release and d[id] not create a genuine issue of material fact." *Id.* The relevant inquiry was whether the plaintiff's mother was aware the plaintiff would be riding horses and was advised there were risks associated with that activity, which she was.

The court then turned to whether the plaintiff's mother was provided with sufficient information "to assess the extent of possible injuries to [her daughter]." *Id.* In making this determination, the court again considered both the language of the release and the plaintiff's mother's independent knowledge and experience. The release contained broad language waiving "any claims of liability, for any injury, even death." *Id.* (internal quotation marks omitted). The plaintiff's mother was further aware that Christopher Reeve, whom she knew personally, had been injured falling off a horse, and was therefore "aware that there were significant risks associated with horseback riding." *Id.* The court thus concluded that the agreement adequately disclosed the extent of potential injuries; it "did not need to include an exhaustive list of particularized injury scenarios to be effective." *Id.*

Before turning to whether Plaintiff's mother's consent to release prospective negligence claims against Defendant was informed, we must first

address the scope of the evidence we may consider in making this determination. The Colorado courts have yet to specifically address this issue. In *Wycoff*, the court "assume[d] for purposes of th[e] case that a facially deficient exculpatory contract could be cured by extrinsic evidence." 251 P.3d at 1264. Relying on this statement, Plaintiff contends our evaluation under Section 13-22-107(1)(a)(V) must be limited to the four corners of the Release unless we first determine that the Release itself is facially deficient, in which case the Release would be invalid under *Jones*. Defendant, on the other hand, maintains we may properly consider the Letter that accompanied the Release as well as Mrs. Squires's actual knowledge on the day she signed the Release.

We predict the Colorado Supreme Court would likely follow the approach advocated by Defendant and adopted by the Colorado Court of Appeals in *Hamill*—in determining whether a parent's consent to release prospective negligence claims is voluntary and informed, the parent's actual knowledge and the information provided in connection with the release should be considered in addition to the language of the release itself. Unlike the fourth factor of the common-law *Jones* test, which focuses on whether the *agreement itself* expressed the parties' intention in clear and unambiguous terms, the focus of the voluntary and informed requirement of Section 13-22-107(1)(a)(V) is on *the parent's decision*. If we were to limit our review to the language of the Release itself, we would not be in a position to adequately evaluate whether the parent's decision

-17-

was informed. To "give[] effect to the General Assembly's intent in enacting" Section 13-22-107, *Carlson v. Ferris*, 85 P.3d 504, 508 (Colo. 2003)—that a parent's decision to release his or her child's prospective negligence claims be honored "[s]o long as the decision is voluntary and informed," Colo. Rev. Stat. § 13-22-107(1)(a)(V)—we must be able to consider the relevant information the parent had and was provided in order to make that decision. Indeed, were we to limit our review to the language of the Release itself, it would put the General Assembly's enactment of § 13-22-107 at odds with *Jones*. Providers of recreational activities would be required to incorporate all relevant information they supplied to parents within the release itself while simultaneously ensuring the release is not "inordinately long or complicated," *Heil Valley*, 784 P.2d at 785. To avoid such a result and give the fullest effect to the General Assembly's intent, we consider not only the language of the Release, but also the information Defendant provided to Plaintiff and Mrs. Squires in connection with the Release as well as Mrs. Squire's actual knowledge on the date she signed the Release.

Considering this evidence, we conclude Mrs. Squires's decision to release Plaintiff's prospective negligence claims against Defendant was informed. Mrs. Squires had sufficient information from which to evaluate the degree of risk Plaintiff faced. She admittedly knew "when she signed the document . . . that her daughter was going on a ski trip." (App. at 139.) The Letter addressed to the students and their parents specifically referred to "[y]our ski lesson" (App. at

209), and the accompanying participant application identified "Sit-Down" and "Bi-ski" as among the "Adaptive Ski Method[s]" (App. at 410) offered by Defendant. The Letter further informed Mrs. Squires that Plaintiff's "ski lesson . . . will involve risk, which may be greater than most people encounter in their daily lives." (App. at 209.) The Release reaffirmed that "it is impossible for BOEC to guarantee absolute safety," and warned that in addition to the "risks during outdoor programs," including "falling," "there may be other risks not known . . . or not reasonable foreseeable at this time." (App. at 210.) After receiving this information, Mrs. Squires did not contact Defendant to discuss the Release and did not inquire as to the risks that were going to be involved with the ski trip. Although Mrs. Squires "may not have contemplated the precise mechanics of her daughter's fall," including the precise mechanics of skiing with a bi-ski, this fact "does not invalidate the release." *Hamill*, 262 P.3d at 953. Like the mother in *Hamill*, Mrs. Squires "knew her daughter would be [skiing] and she was advised that there were risks, known and unknown, associated with the activity." *Id.*

Mrs. Squires likewise had sufficient information from which to assess the extent of possible injuries to Plaintiff. The Release contained broad language releasing "any and all claims," "of every nature," "whether resulting from negligence or otherwise." (App. at 210.) The Release additionally specifically warned of the possibility of "injury, permanent disability, fatality . . . and severe

-19-

social or economic losses that may result from any such incident." (*Id.*) Contrary to Plaintiff's argument, the Release "did not need to include an exhaustive list of particularized injury scenarios," such as the possibility of colliding with a tree after the instructor lost control of the tethers, "to be effective." *Hamill*, 262 P.3d at 953.

We conclude the Release satisfies both the *Jones* test and the voluntary and informed requirement of Section 13-22-107 and is, therefore, enforceable.

## II. FRAUDULENT INDUCEMENT

Plaintiff argues in the alternative that even if the Release is enforceable, it should nevertheless be set aside because it was procured through fraud.[2] "A release is an agreement to which the general contract rules of interpretation and construction apply. Like any contract, a release procured through fraud can be set aside." *Chase v. Dow Chem. Co.*, 875 F.2d 278, 281 (10th Cir. 1989) (internal quotation marks and citation omitted). To establish fraud, a plaintiff must prove

> (1) a fraudulent misrepresentation of material fact was made by the defendant; (2) at the time the representation was made, the defendant knew the representation was false or was aware that he did not know

---

[2] Plaintiff first alluded to this argument in the hearing on Defendant's motion for summary judgment. The magistrate judge then allowed supplemental briefing on the issue. In its response to Plaintiff's supplemental brief, Defendant argued Plaintiff's late reliance on the fraud defense "is neither proper nor excusable." (App. at 378.) In its order, the magistrate judge considered Plaintiff's fraud defense without discussing its timeliness or procedural propriety. Defendant has not argued on appeal that the magistrate judge erred in considering Plaintiff's argument. We therefore have no occasion to address whether Plaintiff's belated fraud defense was properly considered in the first instance.

-20-

whether the representation was true or false; (3) the plaintiff relied on the misrepresentation; (4) the plaintiff had the right to rely on, or was justified in relying on, the misrepresentation; and (5) the reliance resulted in damages.

*Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010). Furthermore, "[t]he misrepresentation must be made with the intent to deceive." *Club Valencia Homeowners Ass'n, Inc. v. Valencia Assocs.*, 712 P.2d 1024, 1026 (Colo. App. 1985).

Plaintiff contends the Letter, which accompanied the Release, contained three fraudulent misrepresentations: (1) "All of [Defendant's] activities are conducted in a manner consistent with the highest standards, as defined by the Association for Experiential Education (AEE)"; (2) "The BOEC is accredited by AEE"; and (3) AEE "independently reviews the policies, practices and educational components of applicant organizations and accredits those that meet their high standards." (App. at 209.) However, Plaintiff has offered no evidence that statements two and three were false; that is, Plaintiff has pointed to no evidence that Defendant, generally, was not accredited by AEE or that AEE does not perform the functions described in statement three. Plaintiff's argument then, hinges on the allegedly fraudulent misrepresentation in the first statement.

Plaintiff maintains the first statement constitutes a fraudulent misrepresentation because AEE does not have standards for adaptive skiing, and Defendant's adaptive ski program is therefore at least one activity that is not

-21-

"conducted in a manner consistent with the highest standards, as defined by [AEE]." (*Id.*) Accepting, without deciding, that this statement constitutes a fraudulent material misrepresentation, Plaintiff has failed to provide any evidence that Mrs. Squires relied on this misrepresentation in deciding to sign the Release. Plaintiff points to no evidence that Mrs. Squires relied on the representation that Defendant's adaptive ski program was conducted in a manner consistent with AEE standards. Rather, she relies on her mother's statements that she "believed that BOEC was an accredited program" (App. at 354), and "that they had an [sic] accredited certified instructors that would manage a safe program" (App. at 357). (*See also* App. at 353 ("[T]hey were, you know, accredited and certified and they'd been doing it for a number of years."), 356 ("That she would be with certified accredited people in a safe program that they could supervise appropriately.").) These statements, even when viewed in the light most favorable to Plaintiff, do not support her position that Mrs. Squires relied on the representation that Defendant's adaptive ski program was conducted in a manner consistent with AEE's standards.[3] Notably, Mrs. Squires made no mention of

---

[3] While Mrs. Squires's testimony may suggest she believed that Defendant's adaptive ski program was accredited by AEE, the Letter made no such representation. Rather, this purported representation was inferred by Mrs. Squires from the three statements listed above in connection with the representation that "all courses are tailored to the specific goals and abilities of [the] students, all activities offered are designed to pose appropriate challenges for students, and the BOEC maintains rigorous standards." (Appellant's Opening

(continued...)

-22-

AEE or its standards when discussing her beliefs about Defendant's program. Because Plaintiff has failed to provide any evidence that Mrs. Squires relied on a material misrepresentation made by Defendant in the Letter, the magistrate judge properly concluded Plaintiff failed to establish Mrs. Squires was fraudulently induced to sign the Release.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the magistrate judge's order granting summary judgment to Defendant on Plaintiff's negligence claim.

---

[3](...continued)
Br. at 31 (internal quotation marks and brackets omitted).) Mrs. Squires's misunderstanding of Defendant's Letter does not excuse her from the consequences of signing the Release. *See Shoels v. Klebold*, 375 F.3d 1054, 1070 (10th Cir. 2004) ("Misunderstanding, not misrepresentation, was the basis for Appellants' acceptance, and so they cannot evade the normal limitations on relief from the consequences of their mistake.").